GEORGE W. WOOD, Appellant, *v.* RUDOLPH F. RABE et al., Executors, etc., Respondents.

A court of equity will not permit the statute of frauds to be used as an instrument of fraud.

The mere breach, however, of an oral agreement to convey an interest in lands is not such a fraud as will authorize the court to interfere.

Where a person through the influence of a confidential or fiduciary relation acquires title to property or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief.

This rule is applicable to dealings between parent and child, and courts will carefully scrutinize them to protect the latter against any undue advantage being taken by the former.

The interest of plaintiff in certain real estate, which interest was of the value of about $10,000, was sold on execution issued upon a judgment against him, and the time for redemption by him expired before he learned of the sale. At the request of his mother and upon the advice of her attorney, his former guardian, he having a short time before arrived of age, and for the purpose of enabling her to redeem for his benefit, and upon her oral promise to hold the interest acquired and reconvey to him upon being paid her loans and advances he confessed a judgment to her for $2,000, which sum she claimed she had loaned to him, but which he insisted was a gift. By virtue of this judgment the mother redeemed and received the sheriff's deed, but refused to convey to plaintiff on demand and tender of the amount of her judgment and of the advances made by her with interest. In an action to enforce the oral agreement, *held*, that it was upon a good and sufficient consideration; and, as it appeared that plaintiff was induced to acquiesce, not by the prom-

ise alone, but by it and the confidential relation conjoined, it could be enforced in equity, and the statute of frauds could not be invoked as a bar to relief.

(Argued March 14, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 14, 1883, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial without a jury.

This action was brought to enforce an oral agreement between the plaintiff and his mother, Maria Mulock, the original defendant, in respect to certain real estate in the city of New York.

The facts upon which the controversy depends, as disclosed by the findings and evidence, are substantially as follows: The defendant Maria Mulock was the daughter of John W. Gilbert, who died prior to 1854, leaving a will by which he devised certain real estate in Nassau street, in the city of New York, of which he died seized, to his said daughter, then the wife of John Wood, for life, with remainder to her children. The plaintiff by virtue of the will, as one of the children of the testator's daughter Maria, became seized of a vested estate in remainder in the undivided eighth part of the premises, dependent upon the life estate of his mother. On the 23d day of February, 1854, two judgments by confession were entered in the clerk's office of the city and county of New York, against the plaintiff, in favor of one Benjamin M. Stilwell, his brother-in-law, one for $723.33, and the other for $362.61, which became liens on the plaintiff's interest in the land. Execution on the first mentioned judgment was issued on the 25th day of September, 1854, to the sheriff of the county of New York, by virtue of which on the 18th day of November, 1854, he duly sold all the right, title and interest which the judgment debtor had on the 23d of January, 1854, or at any time afterward in and to the premises above mentioned, to the said Benjamin M. Stilwell for the sum of $750, and on the same day the sheriff delivered to the purchaser a certificate setting forth the above facts, and that he would be entitled to

a conveyance on the 18th day of February, 1856. The time for the plaintiff, the said judgment debtor, to redeem from said sale, expired on the 18th of November, 1855; no redemption was made by him. In fact he had no knowledge that the land had been sold until about the 27th of November, 1855. The time for a judgment creditor to effect such redemption, or to acquire the interest of the original purchaser, viz.: three months after the expiration of a year from the time of the sale, would expire February 17, 1856. The plaintiff's first knowledge of the execution sale came in this way: Francis Byrne, who had acted as attorney for Mrs. Mulock and who had also been guardian of the plaintiff until his majority casually heard of the sale. He communicated the fact to Mrs. Mulock, and informed her that the time for redemption by the plaintiff had passed. Byrne, on being informed by Mrs. Mulock that she had previously loaned the plaintiff some money, advised her that it was expedient to procure a confession of judgment for the loan, in order that she might redeem the property so that Mr. Stilwell should not have it. Mrs. Mulock thereupon requested the plaintiff to meet her at Byrne's office. The parties met pursuant to appointment November 27, 1855, and both Byrne and Mrs. Mulock urged the plaintiff to confess judgment in favor of his mother, for $2,000, the amount of the loan, so as to enable her to redeem the property for his benefit. The plaintiff at first insisted that the money he had received from his mother was a gift and not a loan. The mother insisted that it was a loan and not a gift. Finally after much urging the plaintiff confessed judgment for $2,000 in favor of his mother on that day, it being for money received by him prior to November 14, 1855. The relation of the interview, given by the plaintiff, which in its essential parts is uncontradicted, is as follows: "She (Mrs. Mulock) said to me, 'George Stilwell has got this interest of yours, and the only way to get it from him is to confess judgment for this money I have loaned you, this $2,000,' and I objected, because Stilwell would let me redeem this if I would pay him the money back; she said 'I will do that for you, I only want to

get it away from Stilwell for your protection and benefit.  Any time that you pay me the money back that I am now paying for you, with interest, I will give your property back again — your right, title and interest back again,' and then I said, ' will you do that ? ' then Mr. Byrne said, ' of course, your mother only does this, George, for your own benefit and protection.' This was said in my mother's presence.  He said, ' she would not take advantage of you, a son, she holds it for your benefit, and will get you out of trouble ; that is all she wants to do, and any time you want to pay her this money back again, with interest, of course, she will let you have it.'   Then I confessed judgment."

Mr. Byrne, who was called as a witness for the defendant, confirms the testimony of the plaintiff.  He says : "At the time of this transaction I acted for both parties, for the best interests of both, to get that property so that Mr. Stilwell should not retain it.   It was on the supposition that Mr. Stilwell wanted to deprive him (George) of the property.   It was an arrangement for the benefit of George.   That was the distinct understanding."   And again : "I certainly understood that she took the property as trustee to preserve the interest of George W. Wood in that real estate."

Mrs. Mulock was also examined as a witness.   She was then an old lady and her memory of the transaction was indistinct, but she did not deny the material facts of the testimony of the plaintiff and Mr. Byrne in respect to what took place at the interview.   She testified : "I don't recollect the conversation ; if he (George) paid me what he owed me, would have given it to him.    I bought it to protect him, because he had a brother-in-law who had bought his right, and this person I did not like ; he had got it for less than its value."

On the 22d of December, 1855, Mrs. Mulock, by virtue of the judgment of November 27, 1855, redeemed from the sale on the Stilwell judgment by paying to the sheriff the sum of $807.50, that being the sum bid by Stilwell on the sale under his judgment with interest thereon, and received from the

sheriff a certificate showing such redemption, and subsequently, on the 18th of February, 1856, received a sheriff's deed. Between her redemption and the giving of the deed, viz.: on the 16th of February, 1856, Mrs. Mulock paid to Stilwell the amount of his other judgment, with interest, being the sum of $413.

It is found that at the time mentioned the value of the interest of the plaintiff in the property sold on the execution and acquired by Mrs. Mulock under the sheriff's deed, was at least $10,000. The Stilwell judgment and the judgment in favor of Mrs. Mulock, amounted in all to about $3,200, and these were the only liens on the plaintiff's interest in the property. It is further found that in December, 1859, the plaintiff tendered to his mother the aggregate of the three judgments, with interest, and demanded a conveyance pursuant to the agreement of November 27, 1855, but she refused to accept the tender or to convey the property. It appears that at about this time unfriendly relations had arisen between the plaintiff and his mother. When the agreement above referred to between Mrs. Mulock and the plaintiff was made, the latter was about twenty-two years of age. This action was commenced in 1862.

Further facts appear in the opinion.

*Robert E. Deyo* for appellant. At the time of making the agreement with his mother, Wood had a substantial interest in the property notwithstanding his time for direct redemption had gone by, and this interest remained intact until the expiration of the time within which judgment creditors and mortgagees could redeem. (2 R. S. 373, § 61 [2 Edm. Stat. 387]; 2 R. S. 371, § 51 [2 Edm. Stat. 385]; *Van Rensselaer* v. *Sheriff of Onondaga*, 1 Cow. 443, 458; *Van Rensselaer* v. *Sheriff of Albany*, id. 501, 509; *Ex parte Peru Iron Co.*, 7 id. 540; *Bissell* v. *Payne*, 20 Johns. 3.) A court of equity will grant relief to prevent a fraud. (*Ryan* v. *Dox*, 34 N. Y. 307, 311; *Robbins* v. *Robbins*, 89 id. 251, 256; *Malins* v. *Brown*, 4 id. 403, 408; *Freeman* v. *Freeman*, 43 id. 34, 39;

*Miller* v. *Ball*, 64 id. 286, 291; *Dodge* v. *Wellman*, 43 How.
Pr. 427, 430; *Church* v. *Kidd*, 3 Hun, 254; Browne on Stat-
ute of Frauds, § 445 A.; *Reech* v. *Kennegal*, 1 Ves. Sr. 123;
*Wheeler* v. *Reynolds*, 66 N. Y. 236, 237.) The confession of
judgment by Wood was a sufficient part performance to
bring him within the exception of the statute of frauds.
(*Wheeler* v. *Reynolds*, 66 N. Y. 227; *Kellum* v. *Smith*,
33 Penn. St. 158, 236; *Freeman* v. *Freeman*, 43 N. Y.
434, 439; *Malins* v. *Brown*, 4 id. 403, 408; *Ryan* v. *Dox*,
34 id. 307, 312; *Miller* v. *Ball*, 64 id. 286; *Grout* v.
*Townsend*, 2 Hill, 554.) It was not "false swearing" for
plaintiff to verify the confession of judgment; the most that
can be said against him is that being convinced by the argu-
ments of his mother, that the sum was a loan, he agreed to
confess judgment for it upon certain conditions. (*Rankin* v.
*Arndt*, 44 Barb. 251.) He was not guilty of a fraud upon any
creditor. (*Van Rensselaer* v. *Sheriff of Onondaga*, 1 Cow.
443, 458; *Van Rensselaer* v. *Sheriff of Albany*, id. 501; *Ex
parte Peru Iron Co.*, 7 id. 540; *Bissell* v. *Payn*, 20 Johns.
3.) The confession of judgment by the plaintiff was a suffi-
cient consideration for his mother's promise to hold the prop-
erty redeemed in trust for him. (*Insurance Co.* v. *Watson*, 59
N. Y. 390, 395; *Wilbee* v. *Elgee*, L. R., 10 C. P. 497, 501;
Pollock on Contracts, 167; *Trigge* v. *Lavallee*, 15 Moore's P.
C. 271, 292; *McComb* v. *Kittredge*, 14 Ohio, 348; *Sanford*
v. *Huxford*, 32 Mich. 310, 311, 313; *Beadle* v. *Whitlock*, 64
Barb. 287; *Palmer* v. *North*, 35 id. 282, 293.) Plaintiff's
prior agreement with Stillwell, that he might redeem if set up,
would have been a bar to a redemption by Mrs. Mulock under
her judgment. (*Miller* v. *Lewis*, 4 N. Y. 554.)

*Randolph F. Rabe* for respondents. The pretended agree-
ment, being by parol, is void under the statute of fraud. (3
R. S. [5th ed.] 220, 221, § 8.) A part performance of a parol
agreement will not, at law, take it out of the statute. (3 R.
S. [5th ed.] 221, § 10; *Jackson* v. *Pierce*, 2 Johns. 221.) A
court will not enforce a verbal agreement unless the plaintiff.

has parted with some value upon the promise. (Story's Eq. Juris., 287 ; *Gernan* v. *Machin*, 6 Paige, 293 ; Brown on Statute of Frauds [3d ed.], 438, 439, 440 ; *Ryan* v. *Dox*, 34 N. Y. ; *Levy* v. *Brush*, 45 id. 589, 596 ; *Baldwin* v. *Palmer*, 10 id. 232, 234 ; Brown on Frauds, § 471 ; 1 Story's Eq. Juris., §§ 760, 761.) By "part performance" the statute means part performance of that branch of the contract which is void by the statute. ( *Van Alstyne* v. *Wemple*, 5 Cow. 162 ; 2 Story's Eq. Juris., § 760 ; *Levy* v. *Brush*, 45 N. Y. 596, 597 ; *Baldwin* v. *Palmer*, 10 id. 235 ; 3 Parsons on Fraud, 139 ; *Dung* v. *Parker*, 52 N. Y. 496.) Plaintiff's claim, that under the parol agreement with his mother an estate, right, title and interest in and to the said lands, in trust, became vested in her, is untenable. (*Getman* v. *Getman*, 1 Barb. Ch. 499, 514.) The (alleged) trust, being created by a parol agreement, is void under the statute of frauds, as no valid trust can be founded on an interest derived from an illegal contract. (3 R. S. [5th ed.], 220, § 6 ; *Rathbun* v. *Rathbun*, 6 Barb. Ch. 98.) Equity cannot interfere to take a case out of the statute unless it is a clear case of fraud ; in which event it extends relief by creating a constructive trust as between the parties. (*Cook* v. *Fountain*, 3 Swanst. 585 ; Browne on Statute of Frauds [3d ed.] 438 ; *Hobbs* v. *Wetherwax*, 38 Hun, 385 ; *Merithew* v. *Andrews*, 44 Barb. 200 ; *Brown* v. *James*, 46 id. 400 ; *Ryan* v. *Dox*, 34 N. Y. 307 ; *Freeman* v. *Freeman*, 43 id. 34 ; *Tyler* v. *Church*, 54 id. 634.)

ANDREWS, J. The trial court found, in substance, that no agreement was ever made between the plaintiff and his mother, that the latter should use the judgment confessed by the plaintiff to her November 27, 1855, to redeem the premises from the sale on the Stilwell judgment for the plaintiff's benefit, or that after such redemption she would convey the interest which she should acquire thereby to the plaintiff on payment of her claims on the property. This finding, although among the findings of fact, must have been intended as a finding of law, and to embody the conclusion

reached by the General Term in its opinion on the first appeal, that the oral agreement to the effect stated in the finding, made between Mrs. Mulock and the plaintiff, did not in law or equity create any obligation, or, either separately or in connection with the other facts and circumstances, furnish any basis for equitable relief, for the reason that the agreement was void by the statute of frauds. Any other construction of the finding would make it inconsistent with the undisputed evidence. The proof is clear that the plaintiff confessed the judgment of November 27, 1855, at the request of his mother and upon the advice of her attorney, his former guardian, to enable her to redeem from the sale on the Stilwell execution for his benefit, and upon her promise to hold the interest acquired and re-invest him with his former estate in the land upon being paid her liens and advances.

There is a moral aspect to this case which strongly appeals to the sentiment of equity and justice. The mother of the plaintiff has acquired the legal title to property devised to him by his grandfather, of the value of at least $10,000 for a consideration, including her own debt, not exceeding $3,200, of which property she was at the time in possession as life tenant under the same will, under an agreement made with the plaintiff when he was in great straits, by which she promised to hold the property for his benefit and re-convey to him on payment of her lien and advances, which agreement she subsequently repudiated. Moreover, when the agreement was made the plaintiff was a young man recently passed his majority, and he confessed the judgment not only at the solicitation of his mother, but under the advise of his mother's legal adviser, his former guardian, upon the most solemn assurance of both that he might implicitly rely upon his mother's promise to re-convey the property.

But neither courts of equity or law sit to enforce mere moral obligations, and the question to be determined is whether a court of equity in accordance with its established principles and jurisdiction, can compel a performance of this agreement, notwithstanding the statute of frauds which makes void oral con-

tracts for the sale of lands (1 R. S. 135, § 8), and forbids the creation of any trust relating to lands, except trusts arising by implication and operation of law, unless by deed or conveyance in writing, subscribed by the party creating the trust or his duly authorized agent (§§ 6, 7). The agreement proved was not in any ordinary sense an agreement for the sale of land, and does not, we think, properly come under the eighth section. It was rather an executory agreement on the one side to confess judgment, and on the other to acquire the title to the land by redemption under the statute and hold it on the trust to convey to the plaintiff upon the condition stated. In other words it created, so far as the words and the essential nature of the transaction could do so, an executory trust for the benefit of the plaintiff.

But being oral, the trust was void within the sixth section of the statute, unless the transaction constituted a trust by implication or operation of law, and was therefore within the exception in the seventh section. It is not easy to ascertain from the adjudged cases the exact scope of the exception in the Stat. Car. 11, of trusts arising by "implication or construction of law," or of the equivalent exception in our statute, of trusts arising by "implication or operation of law." It is not difficult to name trusts which unequivocally are trusts arising by implication or operation of law. Trusts arising from the presumed intention of the parties, indicated by their acts, although not expressly declared, and those arising from the application of some settled principle of equity to the situation, furnish many instances of implied or constructive trusts. Resulting trusts at common law arising from the payment of purchase money, or where the trust is not declared, or is declared only in part, or for any reason fails, are illustrations of the former class, and those arising by equitable construction independently of intention from dealings by trustees or *quasi* trustees with trust property furnish many examples of the latter.

But there is a large class of so-called constructive trusts, or trusts *ex maleficio*, where courts of equity treat the holder of

the legal title to land as a trustee, and, through the medium of
an assumed trust, makes that title subservient to the circum-
vention of fraud and the attainment of justice.    Trusts of this
character are not, I assume, within the exception in the statute.
If they were so considered, then wherever a court of equity
acting upon its own principles, would, independently of the
statute of frauds, separate the legal title and the beneficial
interest, and fasten a trust upon the property to subserve the
purposes of justice, no question under the statute would arise,
for the obvious reason that the case was by its terms excepted
from its operation, and the statute would never be an obstacle
to relief. (But see *Davies* v. *Otty*, 35 Beav. 208 ; *Seichrist's
Appeal*, 66 Penn. St. 237.)    So where a trust is sought to be
established from the violation of an oral agreement purporting.
to create a trust, and a court of equity upholds the trust and
enforces specific performance, the trust is not an implied or
constructive trust within the statute.    (See *Bellasis* v. *Comp-
ton*, 2 Vern. 294.)    The court in granting relief in case
of an oral agreement proceeds upon the ground of fraud,
actual or constructive, and enforces the agreement notwith-
standing the statute, by reason of the special circumstances.

The plaintiff in this case seeks to fasten a trust upon the
legal title of his mother to the property in question, by
force of an oral agreement within the statute, in connec-
tion with the circumstances.    It is important in determin-
ing the question arising in the case, to ascertain whether
there was any consideration for the agreement between the
plaintiff and his mother, because neither a court of equity
nor law enforces contracts, written or oral, in the absence of
any legal or equitable consideration.    When the agreement of
November 27, 1855, was made, the plaintiff had an interest in
the land.    It is true that his time for redemption had expired.
He could not after the expiration of a year from the execution
sale, by payment of the judgment, or in any other way by his
own act alone, divest the purchaser of his right to a deed on
the expiration of the fifteen months.    But until the expiration
of the fifteen months the title to land sold on execution remains

in the judgment debtor. The statute declares that "the title of the judgment debtor shall not be divested by such sale, until the expiration of fifteen months from the time of such sale." (2 Rev. St. 373, § 61.) During the whole fifteen months the judgment debtor is entitled to possession, and to receive the rents and profits of the land, and this is an interest which can be reached by creditor's bill. (*Farnham* v. *Campbell*, 10 Paige, 598.) The debtor also, after the expiration of the year and before the expiration of the fifteen months, has a mortgageable interest in the land, and he may subject it to incumbrances, created after that time, under which the incumbrancers, by redemption, may acquire the title of the original purchaser. The statute expressly enacts that any person having a judgment "rendered *at any time before the expiration of fifteen months* from the time of such sale, or having a mortgage duly recorded within the same period, and which shall be a lien or charge upon the premises sold," shall be entitled to acquire the rights of the original purchaser, etc. (§ 51.) The statute does not apply alone to judgments and mortgages in force at the time the debtor's right to redeem expired. It extends to judgments and mortgages made and entered after that time, and upon a new consideration. This was decided by the former Supreme Court under a similar provision in the statute of 1820. ( *Van Rensselaer* v. *Sheriff Onondaga*, 1 Cow. 443; *Van Rensselaer* v. *Sheriff Albany*, id. 501; *Snyder* v. *Warren*, 2 id. 518; *Ex parte, Peru Iron Co.*, 7 id. 540.) It is manifest that the right of the judgment debtor to mortgage or incumber the land during the three months succeeding the expiration of the year from the sale, may be, and was in this case, a valuable one. By exercising it the debtor, who for any reason has allowed his time for redemption to go by, may in effect sell the equity of redemption. In this case land worth $10,000, was sold for $750, and the debtor's time to redeem had expired. He had, notwithstanding, an interest of great value in his right to mortgage or incumber the property, which he could use for his protection, and to secure himself against the sacrifice of his property.

While the plaintiff was in this situation, at his mother's re-
quest he confessed the judgment of November 27, 1855. The
confession of the judgment was an act he was not bound to
perform, and in consenting to the arrangement proposed, he
relinquished his claim that the money received from his mother
was a gift, and relying upon her promise, he forbore, as may
be assumed, to take any other steps to protect his interest.
Mrs. Mulock also, by reason of the confession of judgment,
acquired a lien on the property before the right of the orig-
inal purchaser to a deed became absolute, and thereby obtained
security for her debt, which she might not, and probably
would not have been able to do if she had been put to the
necessity of a suit to obtain judgment. These circumstances
furnish ample consideration for her agreement with the
plaintiff. (See *Wile* v. *Wilson*, 93 N. Y. 255; *Sanford* v.
*Huxford*, 32 Mich. 313.)

There are two principles upon which a court of equity acts
in exercising its remedial jurisdiction, which taken together in
our opinion entitle the plaintiff to maintain this action. One
is that it will not permit the statute of frauds to be used as an
instrument of fraud, and the other, that when a person through
the influence of a confidential relation acquires title to property,
or obtains an advantage which he cannot conscientiously retain,
the court, to prevent the abuse of confidence, will grant relief.

"The statute of frauds," observes Lord REDESDALE in *Bond*
v. *Hopkins* (1 S. & L. 433), "says that no action or suit shall
be maintained on an agreement relating to lands which is not
in writing, signed by the party to be charged therewith; and
yet the court is in the daily habit of relieving where the party
seeking the relief has been put into a situation which makes it
against conscience in the other party to insist on a want of
writing so signed, as a bar to his relief." The principle upon
which the court proceeds in such cases is clearly expressed
by Lord WESTBURY in *McCormick* v. *Grogan* (L. R., 4 E. & I.
Appeals, 82). "The court" he says, "does not set aside
the act of Parliament, but it fastens upon the individual

who gets the title under that act, and imposes upon him a personal obligation, because he applies the act as an instrument for accomplishing a fraud." It is true that the fraud upon which the court acts in such cases must be something more than that which in a moral sense arises from a mere breach of an oral agreement. (*Levy* v. *Brush*, 45 N. Y. 589; *Wheeler* v. *Reynolds*, 66 id. 229.)

But in this case there was on the part of Mrs. Mulock something more than the ordinary case of a mere breach of a parol agreement, and on the part of the plaintiff something more than a bare reliance on the word, honor, or promise of another. It was a transaction between parent and child, a relation which, if not fiduciary in the strict sense, was nevertheless one ordinarily involving the greatest confidence on one side, and the greatest influence on the other. The mother was the original actor. She induced the plaintiff, a young man just arrived at age, and with limited experience, to confess judgment and to forbear other measures to protect himself against impending loss, upon her promise to protect his interests, assuring him in substance that as a son he could safely rely upon the promise of his mother. It was for his interest and not hers that she professed to be acting, and her attorney united with her in urging the plaintiff to acquiesce in the proposed arrangement. It was on the part of the son the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined. The confidence in fact, had its spring and origin in the relation, and that relation was a controlling ingredient moving his action. It would be a gross wrong to permit that confidence to be betrayed, and we are of opinion that the statute of frauds cannot be invoked as a bar to relief. The principle, that when one uses a confidential relation to acquire an advantage which he ought not in equity and good conscience to retain, the court will convert him into a trustee, and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds. The rule governing dealings between persons standing in fiduciary relations is appli-

cable to parent and child, and courts carefully scrutinize them, to protect the latter against any undue advantage being taken by the former. (*Archer* v. *Hudson*, 7 Beav. 551; *Hoghton* v. *Hoghton*, 15 id. 278; *Wright* v. *Vanderplank*, 8 DeG., M. & G. 133.) The trust sought to be enforced in this case does not arise exclusively from the agreement, but from the agreement in connection with the other circumstances, the interest of the plaintiff in the land, the confidential relation of the parties, the youth and inexperience of the plaintiff, the fact that he acted without independent advice, and the injustice which would result in case the agreement should not be enforced. Therefore, without passing upon the question whether independently of the peculiar circumstances attending the agreement it could be enforced in equity, we are of opinion that, upon the case as presented, the agreement in connection with the circumstances make out a case for relief notwithstanding the statute. (See *Heron* v. *Heron*, 2 Atk. 160; *Young* v. *Peachy*, id. 254; *Ryan* v. *Dox*, 34 N. Y. 307; Perry on Trusts, § 226.)

The judgment should therefore be reversed and a new trial granted.

All concur.

Judgment reversed.