body would be ignorant of the similarity until the certificate was filed. In that event it becomes indispensable that some tribunal should select which body should have the use of the name and which should select a new name. In those cases the statute gives the authority to the clerk, and, in order that neither body may thus be, inadvertently and without fault, deprived of the opportunity to vote for its candidates, it permits such body to at once choose another name. In the event that such body of voters neglects to do so, it is made the duty of the clerk to select a new name for the party so deprived, and thus their candidates' names shall appear upon the official ballot as candidates of the new party so selected. But in the event that a body of voters deliberately select, as the party name to be designated in their certificate, one that is expressly forbidden by the statute, no such provision for a change is made. To include in the name selected that of an organized political party could hardly be done in good faith and through ignorance. It is a plain violation of a plain law, and hence the statute did not make any provision for relieving it from the position which it thus deliberately assumes. I am of the opinion that there is no law authorizing the county clerk to make the selection which the appellant asks, and, had the order so directed, it would have been unwarranted.

But it is to be noticed that the order does not in any manner restrain the county clerk from selecting a new name, and placing the appellant's name upon the official ballot as a candidate of such new party. The restraint clearly extends to placing his name as a candidate of the "Independent Democratic Party" only; and, even if the justice had authority to go to the extent which the appellant claims, his omission to do so would not be ground for a reversal of the order which he did make. If, under the statute, it was the duty of the county clerk to select a new party name, as claimed by the appellant, the order complained of did not interfere with its performance; and if the justice, in the exercise of his discretion, omitted to direct the clerk to perform such duty, the appellant has no just ground for complaint.

I conclude that the order should be affirmed, with $10 costs and disbursements against the appellant. All concur.

(92 App. Div. 544.)

LEARY v. CORVIN et al.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. FRAUDULENT CONVEYANCES—SETTING ASIDE.

Plaintiff's father purchased certain premises with money given him by plaintiff, and certain other moneys furnished by his wife, with the understanding that he and his wife should use the property as their home as long as they lived, and that on their death it should belong absolutely to plaintiff, who was an only child. Title to the property was taken in the father's name without plaintiff's knowledge. Subsequently the parents conveyed the property to a church for a nominal consideration by an absolute deed, which was duly recorded, and on the same day the church gave back a conveyance to the parents, giving them a life estate in the property, but this conveyance was not recorded. Plaintiff's mother afterwards died, and the property was subsequently conveyed by the church to defendant L., pursuant to an order of court, for an expressed consideration of $14,500, but L. paid no money of her own. On the same day plaintiff's father released his life estate to L., who at the

same time executed a mortgage for $6,000 on the premises in consideration of a loan for such sum which L. had procured, and reconveyed a life estate to the father. With the proceeds of the loan the sum of $5,000 was paid to the church, and the balance of $1,000 was used for the expense involved in the various transfers and transactions. Plaintiff's father afterwards married L. *Held*, in an action by plaintiff after the father's death to recover the land, that L. was not a bona fide purchaser for value, and that plaintiff should be decreed to be the absolute owner of the property, subject to the mortgage of $6,000, and to recover the $5,000 received by the church.

O'Brien, J., dissenting.

Appeal from Special Term, New York County.

Action by Rose M. Leary against Lizzie J. Corvin and another. From a judgment for plaintiff, defendants appeal. Affirmed.

The following is the opinion of the court below (GREENBAUM, J.):

This action is brought to establish the title in fee absolute in the plaintiff to certain real property situate in the city of New York, subject only to an existing mortgage of $6,000, to compel defendant Corvin to render an account of rents collected, and to recover a judgment against the defendant the Church of St. Mary for the sum of $5,000 and interest. The facts out of which this controversy arises are set forth in detail in the opinion of Mr. Justice Werner, before whom the case was, originally tried, and who dismissed the complaint upon the merits (29 Misc. Rep. 68, 60 N. Y. Supp. 563), and in the opinions of the Appellate Division, which reversed the judgment of the Special Term (63 App. Div. 151, 71 N. Y. Supp. 335). Upon the present trial substantially the same testimony was presented as upon the former trial, supplemented, however, by the testimony of one Martin Cody, whom the plaintiff produced as a newly discovered witness. It would seem to be sufficient here to state that the plaintiff was the daughter of one Patrick J. Corvin and Mary Corvin; that in 1875, plaintiff, who then married a Mr. Leary, gave to her father the sum of $1,385, which she had drawn from two savings banks in this city, where the money had been deposited in her name for upwards of one year; that the father, with the money thus given him by his daughter and certain other moneys given to him by his wife, Mary, purchased the premises involved in this suit, known as No. 279 East Broadway, with the understanding that the parents would use it as their home as long as they lived, and that upon their death the property would belong absolutely to the plaintiff, who was an only child. It appears that the plaintiff, some time after her marriage, unfortunately became addicted to the liquor habit to such a degree that it became necessary for her welfare on a number of occasions to place her in a sanitarium, although it is proper to state that it is now asserted that for a number of years past she has overcome the desire for drink. The title to the property was taken in the father's name, a fact of which the plaintiff claims that she had no knowledge at that time. In December, 1890, the father and mother conveyed the property in question to the defendant the Church of St. Mary for a nominal consideration by deed absolute, which was duly recorded. On the same day the church executed a conveyance back to the parents, giving them a life estate in the property, but which was not recorded. In February, 1892, the mother, Mary Corvin, died. On December 21, 1892, pursuant to an order of this court upon an application for leave to sell, the church conveyed the premises to one Lizzie J. Hurley (now known as Lizzie J. Corvin), one of the defendants herein, for the expressed consideration of $14,500. On the same day the father, Patrick J. Corvin, released his life estate to said Lizzie J. Hurley, who at the same time executed a mortgage for $6,000 upon the premises in consideration of a loan for said sum which she had procured, and reconveyed a life estate to Patrick J. Corvin. From the proceeds of the mortgage loan the sum of $5,000 was paid to the defendant the church, and the balance of $1,000 was used for the expenses involved in the various transfers and transactions just detailed. On February 9, 1893, Patrick J. Corvin married said Lizzie J. Hurley. On March 31, 1898, he died, and on August 26, 1898, this action was commenced.

The complaint is predicated upon the theory that, not only was the property impressed with a trust of an estate in remainder at the time of its purchase in favor of the plaintiff, but that the conveyance to the church was made upon the same trust. The plaintiff has submitted the testimony of various witnesses in support of her claim that the property was originally purchased partly with her money, upon the understanding that she was to own the remainder after the termination of the life estates of her parents, and no proof in contradiction of such testimony has been presented, and this testimony is entitled to credit, unless the cross-examination of the witnesses, their relation to the parties, the circumstances and probabilities of the case tend to impair its probative force. The defendants have submitted testimony of living witnesses as to the circumstances attending the conveyance to the church, showing that it was not made upon any trust, and this testimony, being uncontradicted by any direct proof, should only be discredited for reasons similar to those indicated with respect to plaintiff's proof. Under the view that I take of the case, I have concluded to assume that the testimony given by the defendants' witnesses, so far as it affects the issue relating to the trust character of the conveyance to the church, is truthful, and I shall consider the case solely with reference to plaintiff's claim that the property was impressed with a trust at the time of its purchase by plaintiff's father. It is undisputed that the plaintiff had the legal title to the moneys on deposit in the savings banks, and it would be mere speculation to indulge the thought that this money belonged to the father, or, if it had originally belonged to him, that she held the money in trust for him. On the contrary, the circumstances favor the finding of an absolute ownership of this money in the plaintiff, who had lived with her parents until her twenty-fourth year, rendered services in the household, and assisted in serving and waiting upon boarders and lodgers kept by her mother. But, even if the money was a gift from her parents, plaintiff's title thereto, so far as the proofs show, cannot well be questioned. Added to the testimony produced upon the previous trial is that of the witness Cody, who confirms that of the other witnesses as to the purchase of the real estate in question in part with plaintiff's money, and upon the understanding that the title thereto was to vest in plaintiff upon her parents' death. I do not think that plaintiff's witnesses have been discredited. The circumstances attending the purchase, the fact that plaintiff was the sole child, and that complete confidence seems to have prevailed between parents and daughter, all these considerations tend to strengthen the belief that it was probable and natural for the parents, at the age at which the plaintiff had then attained, to have had the understanding with their daughter to which these witnesses testify. It also appears, upon an application of the Northampton Tables, that the sum contributed by the plaintiff was about equal to the value of the estate in remainder, subject to the life estates of the parents. Although this fact is doubtless a pure coincidence, it is nevertheless evidence that the plaintiff gave a valuable consideration for her prospective remainder interest. The ordinary method of conveying to the church a fee in remainder would have been by deed conveying the title subject to the enjoyment in possession on the part of the grantors during their lives, or by a conveyance of an absolute deed and a simultaneous reconveyance of a life estate to the grantors, as here done, coupled, however, with a simultaneous record of both instruments, which was not done in this case. A departure from the ordinary procedure casts suspicion upon the transaction, because of the secrecy implied with reference to the understanding as to the reservations intended. Such a secret arrangement is consistent with the idea that the parents, knowing the daughter was entitled to the property after their death, deliberately entered into a plan which should keep from her, in her lifetime, knowledge of the real disposition they had made of the property, and, for aught one knows, after having given her to understand that the church was holding the property in trust for all of them, for some such reason, as the proofs indicate, as that the father might remarry after his wife's death. That the defendant Lizzie J. Corvin is not an innocent purchaser for value is evident from the facts attending her acquisition of the title. The petition made to this court for leave to sell these premises, and in which plaintiff's father united, contained the false allegation that "it is proposed to sell the said property to Lizzie J. Hurley for fourteen thousand five hundred dollars, which is the best price that can be obtained for the same, and to apply the

proceeds of such sale in payment, so far as may be necessary, of the indebtedness of the corporation and the cash value of the life tenant's estate." As matter of fact the "cash value of the life tenant's estate," as calculated by the Northampton Tables, was less than $5,000, leaving the amount to which the church was entitled as upwards of $9,000, and yet the amount actually paid to the church was but $5,000. The defendant Lizzie J. Corvin paid no money of her own for the conveyance, but from the mortgage loan of $6,000, obtained when title was taken, the sum of $5,000 was paid to the church, and the remaining $1,000 went to pay all the expenses incurred in the proceedings for leave to sell and in procuring the loan. The unusual circumstance of the payment of $1,000 for all the expenses by a purchaser, taken in connection with the marriage of the defendant Lizzie J. Corvin, the purchaser, to Patrick J. Corvin, plaintiff's father, within a few months after the conveyance, clearly shows that she was used merely as a dummy; that she was not a bona fide purchaser, and that she was not a purchaser "for value."

Having found the facts, it is in order to determine the law applicable to them. The expressions of the Appellate Division on the appeal heretofore taken in this case, and the principles announced in Goldsmith v. Goldsmith, 145 N. Y. 313, 318, 39 N. E. 1067, seem to be controlling here. The general rule stated in the latter case, following that declared in Wood v. Rabe, 96 N. Y. 425, 426, 48 Am. Rep. 640, was "that when a person, through the influence of a confidential relation, acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief." It was added that, while the fraud must be something more than the mere breach of a verbal agreement, yet, where the transaction is one between parent and child, and involves the greatest confidence on one side and the greatest influence on the other, the case is one in which equity may properly intervene." The facts here presented seem peculiarly to require the intervention of a court of equity to enforce the understanding or agreement between the plaintiff and her parents when the property was purchased. No rights of innocent third parties are affected by decreeing that the fee of the property involved be declared to vest in the plaintiff. The defendant church concededly paid no consideration for the conveyance to it while the defendant Lizzie J. Corvin is not a bona fide purchaser, in view of the circumstances attending her acquisition of the title to the premises, nor a purchaser for value, and, if suitable provision be made to relieve her from any possible liability under the bond which she gave upon the execution of the existing mortgage, no injury can come to her by setting aside the conveyance to her.

I therefore decide that the plaintiff be decreed to be the absolute owner of the property described in the complaint, subject to the mortgage of $6,000; that in view of the admission upon record as to the net rental for the year ending March 29, 1899, being $700, and of the waiver of plaintiff to any further account made upon the argument, the defendant Lizzie J. Corvin pay over to the plaintiff $700, with interest from April 1, 1899, in lieu of an accounting for rents collected; that the defendant Lizzie J. Corvin be relieved from the obligations of her bond secured by the $6,000 mortgage by sufficient indemnity or otherwise; that the plaintiff have judgment against the defendant the Church of St. Mary for the sum of $5,000, with interest from August 20, 1898; and that the plaintiff is entitled to the net proceeds of the rents collected by the receiver heretofore appointed herein. No costs.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

David McClure, for appellant Corvin.

Michael J. Scanlan, for appellant Church of St. Mary.

J. Aspinwall Hodge, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the court below.

O'BRIEN, J. dissents.