LAFAYETTE STREET CHURCH SOCIETY OF BUFFALO, Respondent, *v.* HERBERT F. J. NORTON, Appellant.

Evidence — action to impress alleged trust upon a mortgage — when evidence and findings of fact insufficient to sustain judgment in favor of plaintiff.

1. It is the settled law of this state that parol evidence is inadmissible to limit the effect the law attributes to the delivery of a deed to a grantee, since any oral condition accompanying the delivery, in such case, would be repugnant to the terms of the deed. (*Hamlin* v. *Hamlin*, 192 N. Y. 164, followed.)

2. This action was brought to impress a trust in favor of the plaintiff upon a mortgage held by the defendant, to compel the transfer thereof to the plaintiff with an accounting for all moneys paid thereon, and to enjoin the defendant from assigning or incumbering said mortgage during the pendency of the action. Upon examination of the facts, *held*, that the findings do not support the judgment, and that upon the facts found the property in question was not impressed in the hands of the defendant with any trust in favor of plaintiff.

*Lafayette St. Church Society* v. *Norton*, 134 App. Div. 994, reversed.

(Argued May 4, 1911; decided June 13, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 24, 1909, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to impress a trust in favor of the plaintiff upon a mortgage for $52,000 held by the defendant, to compel the transfer thereof to the plaintiff with an accounting for all moneys paid thereon and to enjoin the defendant from assigning or incumbering said mortgage during the pendency of the action.

The answer, after admitting certain allegations of the complaint, denied the remainder and pleaded the Statute of Limitations for the period of six years. After a trial

at Special Term judgment was rendered in favor of the plaintiff substantially in accordance with its prayer for relief as to an undivided half of the mortgage held by the defendant when the action was commenced, the other half having been previously assigned to a *bona fide* purchaser. The Appellate Division unanimously affirmed and the defendant appealed to this court.

The facts found, some details being omitted, are substantially as follows: The plaintiff is a religious corporation and the defendant is a practicing lawyer, the brother and law partner of Nathaniel W. Norton, who was one of the trustees of the church and had been for a long time prior to the transaction in question. In January, 1901, the plaintiff owned two church structures, one known as "The Old Church Property," which was no longer used for religious worship, and the other with a new and valuable edifice thereon, which was in constant use for church purposes. The society was heavily in debt and the expense of holding "The Old Church Property" was so great that "it was imperatively necessary" to lease or sell it "in order to secure present revenue." It was subject to a mortgage for $60,000, and while the carrying charges for interest and taxes amounted to a large sum annually, the income was but nominal. For a long time efforts had been made to sell it without success and it was impossible to lease it at a satisfactory rental, except for use as a theatre, and some of the members of the congregation were unwilling that it should be leased for that purpose. At the annual meeting held on the 8th of January, 1901, a resolution was passed authorizing the trustees to sell, lease or otherwise dispose of it and to execute the necessary instruments to carry the resolution into effect. Thereafter at a meeting of the board of trustees the defendant's brother, one of their number, stated that after various negotiations "in view of the difficulty of making a lease direct because of the opposition of the people in the church to its leasing, an arrangement was

proposed by which the property should be transferred at a price stated to some person who should take the property subject to the present Erie County Bank mortgage *and himself give back a mortgage upon the property for the balance of the purchase price as agreed upon. If such price could be agreed upon with such person, then that person to whom the property was transferred would be at liberty to enter into a lease with the party.*" Thereupon a resolution was adopted directing application to be made to the court for authority to sell the property for a sum not less than $120,000, of which $60,000 was to be represented by the old mortgage and the balance by a new mortgage upon such terms and conditions as should be agreed upon. The application was accordingly made and leave was granted by the court authorizing the sale on the terms specified. Thereafter a deed of the property was made to the defendant for the sum of $120,000, which the trial court found was the full value of the property, and a mortgage executed by him to the plaintiff for the sum of $60,000, but without any bond or personal obligation for the payment of said sum, and a lease was made by the defendant to the theatre people for the term of five years. Just before the expiration of the demised term, in April, 1906, the defendant wrote to the plaintiff offering to pay $20,000 on his mortgage then past due and asking for an extension of time for the payment of the balance. The request was granted and the defendant paid to the plaintiff the sum of $20,000 on account of the mortgage. Thereupon the defendant sold and conveyed the premises for the sum of $172,000. Subsequently the plaintiff brought this action claiming that the defendant held the property conveyed to it as its trustee and for its benefit and asking judgment that he account for what he had received on the sale.

*Moses Shire* and *Vernon Cole* for appellant. The fact that Nathaniel W. Norton was one of the plaintiff's

board of nine trustees does not impress upon the property a trust, so that the defendant was forbidden to purchase it, as he did under all the facts, with the open and clear disclosures, as shown by the proofs and findings herein. (*Robertson* v. *Bullions,* 11 N. Y. 265; *Gram* v. *E. L. Society,* 36 N. Y. 163; *Parish of Bellport* v. *Tooker,* 21 N. Y. 267; *Madison* v. *Baptist Church,* 46 N. Y. 131; *Landers* v. *Teshmech,* 97 N. Y. 119; *Wheaton* v. *Yates,* 18 N. Y. 395.)

*George Clinton* for respondent. The findings of fact fully support the conclusions of law and the judgment. (*Poillon* v. *Martin,* 1 Sandf. 569; *Gardner* v. *Ogden,* 22 N. Y. 327; *Lingke* v. *Wilkinson,* 57 N. Y. 445.) When the title to plaintiff's property was conveyed to the defendant he became a trustee for the plaintiff. (*Taylor* v. *Klein,* 47 App. Div. 343; *Bennett* v. *Austin,* 81 N. Y. 308; *Fulton* v. *Whitney,* 66 N. Y. 848; *Ex parte Lacey,* 6 Ves. 625.) The facts found by the court create an equitable trust in favor of the plaintiff. (*Moore* v. *Rector,* 4 Abb. [N. C.] 51; *People ex rel. Freeman* v. *Hurlbert,* 46 N. Y. 110.)

CULLEN, Ch. J. I am of opinion that the facts found by the trial court do not support the judgment. The foundation of the plaintiff's right to relief are the two findings:

"That it was not the understanding of the trustees that the transfer to a third person should deprive the plaintiff of its real ownership of the property.

"That it was the understanding and intent of the trustees that the property should be conveyed to a third person to hold for the church and lease to the theatre people, in order to cover up and conceal from the church members the fact that it was in reality leasing to them."

There is no finding that the defendant ever agreed to hold the lands conveyed to him in trust for the plaintiff,

and, on the contrary, there is an express finding to which
I snall hereafter allude, which negatives any such promise
or agreement.  And even had such a promise been made,
it not being in writing, the promise with the two find-
ings I have quoted would be insufficient alone to establish
the trust and entitle the plaintiff to relief.  (*Wood* v.
*Rabe,* 96 N. Y. 414.)  It is the settled law of this state
that parol evidence is inadmissible to limit the effect the
law attributes to the delivery of a deed to a grantee.
*Hamlin* v. *Hamlin* (192 N. Y. 164) was an action by the
wife to set aside a deed made by her to her husband on
the claim that she delivered the deeds "simply to help
him temporarily, in case he needed the money for his busi-
ness."  This court said, through GRAY, J.: "If we should
give full effect to the plaintiff's claim, it would be to hold
the delivery by her of the deeds to have been conditional
and not absolute; but that would be violative of the set-
tled rule in this state that a delivery cannot be made to
the grantee conditionally.  Any oral condition accom-
panying the delivery, in such case, would be repugnant to
the terms of the deed and parol evidence to prove that
there was such a condition attached to the delivery is
inadmissible." (p. 168.)  (Citing *Souverbye* v. *Arden,* 1
Johns. Ch. 240; *Worrall* v. *Munn,* 5 N. Y. 229; *Wallace* v.
*Berdell,* 97 N. Y. 13; *Blewitt* v. *Boorum,* 142 N. Y. 357.)
There can be no distinction as to this element between the
case at bar and that cited.  There it was attempted to
show the title was to pass to the husband by the deed
merely temporarily; here, that it was not to pass at all.
As to such a claim it is said in *Wallace* v. *Berdell*
(*supra*): "The General Term in their opinion say that
they are of the opinion that the evidence leads to but one
conclusion, namely, that the trust deed was made for a
temporary purpose only.  *  *  *  If this be the correct
view of the facts, the conclusion that the deed was invalid
is clearly erroneous.  *  *  *  The delivery having been
to the grantee himself, neither party would have been

permitted to show, for the purpose of defeating the rights of the *cestuis que trustent*, that the delivery was with intent that the deed should not take effect, or that it should not take effect unless again delivered, or unless the grantor should afterward determine that it should take effect, or upon any other contingency whatever, contrary to the terms of the instrument." (p. 24.) Therefore, to uphold the judgment below some other element must be established than those I have referred to. Doubtless, a relation of confidence between the parties would be sufficient had the defendant made a promise to hold the lands in trust (*Wood* v. *Rabe, supra*), and it is claimed that such relation was established by the fact that the defendant was the law partner of his brother, Nathaniel W. Norton, who was one of the trustees. Now, while the defendant could not retain any advantage he might gain over the plaintiff by virtue of this relation, still the relation did not necessarily preclude him from becoming a purchaser of the property, and so the trial court found. At the time the trustees of the plaintiff voted to sell and convey the property to the defendant they also authorized the execution of an agreement with the defendant as to his responsibilities. The agreement recited the conveyance for the sum of $120,000, represented by a mortgage of $60,000 then on the property and a further mortgage of $60,000 to be given to the plaintiff; that there was a proposition from one Kernan and others to take a lease of the property for the period of five years and to pay as rent $4,000 a year quarterly, in advance, as well as all taxes and assessments, and to keep the buildings insured for a sum not less than $25,000, loss payable to mortgagee; that the lessees proposed to make certain improvements upon the property. It then contained an agreement by the defendant that he would, so far as he was able, safeguard "*himself* and mortgagees" by seeing to it that the contracts for such improvements were carried out, and that the improvements were paid for by the lessees;

that the work done in improvements should not interfere with the building laws of the city, and that the property should not be wasted or made of less value by reason of any improvements being begun and then abandoned, which should be provided for either by giving a bond or deposit by James L. Kernan and others to the extent of the cost of the proposed improvements or in some other manner. It further provided that if the lease contemplated should not be made the defendant should reconvey the property to the plaintiff and take a discharge of his mortgage. Lastly, the defendant agreed to collect the rents under the lease as the same should become due and immediately pay over the same to the plaintiff, " to the extent of Four Thousand Dollars yearly," which rent should be in lieu of interest upon the mortgage debt upon said property; and the defendant was not to be personally obligated to pay more moneys than he had received. As to this agreement, the Special Term expressly found " that at the meeting of the trustees held on the 26th of January, 1901, Nathaniel W. Norton informed the trustees that his brother would take the property *on the terms mentioned in said contract and upon no other terms ;* that he had no money to invest in the property and could not pay anything for carrying it during the leasehold period."

This finding of the trial court necessarily excludes any promise, agreement or assent on the part of the defendant to anything except that which is provided for in the written agreement. He distinctly defines his position and the terms on which he would accept the conveyance to the trustees of the plaintiff, and with full knowledge of those terms and conditions the trustees directed the conveyance to him and entered into the agreement the defendant proposed. It is to be noted that the agreement in one contingency, and only in one contingency, provides for a reconveyance of the property, that is in case the proposed lease should not be executed, and the agreement also provides that the defendant shall safeguard not only the plaintiff

but himself, by seeing that the lessees pay for the improve-
ments they may make in the property.   In the face of this
agreement and the finding of the court as to it it seems
to me idle to claim that the property was impressed in the
hands of the defendant with any trust in favor of the
plaintiff, or that the defendant's obligations and relations
to the property were any wise different from those
expressed in the conveyance and agreement.   If there is
any inconsistency between the finding quoted and the
other findings made by the trial court, the appellant is,
under the settled rules of practice, entitled to the benefit
of the one most favorable to him.

I think also that the plaintiff, by its subsequent con-
duct, ratified and confirmed the conveyance to the defend-
ant.   The trial court found that in April, 1906, five years
after the transaction, and within a few days before the
expiration of the lease to the theatre company, the defend-
ant wrote to the trustees of the plaintiff offering to pay
$20,000 on the plaintiff's mortgage and asking, in consid-
eration thereof, that the remainder be allowed to stand
for four years, $5,000 to be paid each year on the princi-
pal, together with interest; that the trustees adopted a
resolution that the request of the defendant be com-
plied with, and thereupon the defendant paid to the plain-
tiff the sum of $20,000.   It is very probably true that, no
new consideration being advanced, the payment by the
defendant of $20,000, already due on the mortgage, was
not a sufficient consideration for its extension, and the
plaintiff might have insisted on the immediate payment
of the balance, despite of its receipt of the $20,000 on the
condition stated.   But the receipt of the money seems to
me plainly an acknowledgment that the deed given by
the plaintiff was effective to pass the title to the defend-
ant and that the title was then in him.   On no other
possible theory could the plaintiff, under the facts then
known to it, have been entitled to the money.   If the
defendant held title simply as the trustee or dummy of the

plaintiff, it was not entitled to money from him unless under its instructions he had sold the property on its behalf, of which there is no finding, and, on the contrary, the plaintiff claims to have been ignorant at the time of any sale.

Nor am I disposed to look upon the transaction as so unconscionable on the part of the defendant or prejudicial to the plaintiff as is contended. The members of the church empowered the trustees to sell the property, the use of which the church no longer required. No fraud was practiced upon them. The trustees had made diligent effort in that behalf and failed. The property was producing no income, and carrying it was a severe burden upon the resources of the church. Proposals were made to lease it for the purpose of a theatre, but the trustees, while they were not unwilling that it should be occupied for that purpose, were unwilling that the church should lease it for such a use, fearing dissatisfaction on the part of some of the church members. Thereupon the scheme was planned which was subsequently carried through and which resulted in the property being used as a theatre. In the adoption of this plan the trustees exhibited some moral cowardice, but committed no fraud. The plan was to convey the property to some one who would take it at its full value, the purchase money to be secured by a mortgage on the land, but without personal liability of the grantee. He was to make the lease to the theatre. If the negotiations for the lease failed, the property was to be reconveyed to the church. If the lease was made, the grantee was to pay, on account of the interest on the mortgage, only the amount of rent he might receive. By this arrangement the plaintiff was no worse off than it was before, for if there was no lease the property was reconveyed. If there was a lease the plaintiff would get just what it was willing to receive, had the trustees had the moral courage to rent the property for a theatre. The defendant became personally

liable for the rent he might receive, and if he failed to pay it, the mortgage to the plaintiff, which ran only for a year, could be immediately foreclosed. What the plaintiff undoubtedly did lose was the chance of the appreciation in the value of the property. On the other hand, the plaintiff got the defendant's obligation to collect the rent, look after the property, to care and superintend the improvements, and so arrange that there should be no charge against the property for the cost of such improvements by the failure of the lessees themselves to pay therefor. For these services the defendant could not recover any compensation from the plaintiff. The only inducement for him to do this work and assume the obligations was the chance that he might make a profit on the sale of the property, and it was doubtless due to the efforts of himself and Luther, with whom the court found he agreed to divide the profits, that a profit was finally realized. Often an option is given on real estate for a nominal consideration, in the belief or hope that the party to whom it is given may be able to effect a sale where the owner had been unable to do so. I am by no means certain that, taking the transaction between the parties solely as it appears on the face of the instruments executed by them, the transaction was not a beneficial one to the plaintiff and did not enable it to make a sale that by its own efforts it would have been unable to effect.

The judgment should be reversed and new trial granted, costs to abide event.

GRAY, J. (dissenting). I vote for the affirmance of the judgment. The case differs from that of *Hamlin* v. *Hamlin*, (192 N. Y. 164), where it was sought to prove that a deed had been conditionally delivered. Here, that the delivery of the deed was absolute is not disputed. The claim of the plaintiff is that the conveyance was upon trust and that the defendant must account for his acts as its trustee. It was found " that the defendant

knew that the plaintiff's trustees in. conveying the property to him did so, simply, for the purpose that he might hold the same for plaintiff's benefit and lease it to the theatre people." This finding has been unanimously affirmed and is conclusive as to the nature of the defendant's title.

HAIGHT, WERNER and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.; VANN and CHASE, JJ., concur with GRAY, J.

Judgment reversed, etc.