WILLIAM JEREMIAH, Appellant and Respondent, v. ROSINA A. PITCHER, Respondent and Appellant.

*Specific performance of an oral agreement by which a daughter promised to convey lands, for which the father had paid, as he might direct.*

A real estate dealer having an insane wife and wishing, in the pursuit of his business, to deal in real estate free from any claim of dower therein on the part of his wife, who was incompetent to join in a conveyance of it, purchased property in the name of his daughter upon her promise to convey it as he might thereafter direct, paid the purchase price in part in cash and in part by a mortgage signed by his daughter and himself, which mortgage was afterwards paid by him, collected all the rents and appropriated them to his own use without any protest on the part of his daughter, and paid all taxes and water rents on the premises.

*Held*, that the transaction was an agreement fully performed on the father's part, and did not come within the Statute of Uses and Trusts, declaring that where a grant is made to one person and the consideration is paid by another, no trust shall result in favor of the party paying the purchase price;

That a court of equity would decree specific performance of the contract.

CROSS-APPEALS by the plaintiff, William Jeremiah, and by the defendant, Rosina A. Pitcher, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on

the 19th day of July, 1897, upon the decision of the court rendered after a trial at the Kings County Special Term.

*P. H. Vernon,* for the plaintiff.

*Henry Major,* for the defendant.

WOODWARD, J. :

This action was brought to establish a trust in favor of the plaintiff, and it is alleged that in 1877 and 1879 the plaintiff purchased certain real estate in the city of Brooklyn; that before closing such purchases he entered into an agreement with this defendant, who is his eldest daughter, whereby the title to the property was to be taken in her name, she agreeing to convey it upon the order of the plaintiff; that, relying upon this promise, the plaintiff purchased the property and caused it to be conveyed to the defendant, but that subsequently, on demand being made for the conveyance of the property, she refused to comply with the agreement. The defendant answering, denies the alleged agreement and sets up the Statute of Frauds, the Statute of Limitations, and the separate and distinct defense that the conveyance was intended as a gift or advancement to her as plaintiff's daughter.

It appeared upon the trial that the plaintiff in this action was, from 1867 to 1887, a real estate and insurance agent, doing business in the city of Brooklyn. His family consisted of a wife and three daughters, the defendant in this action being the oldest. In 1873 the wife of the plaintiff became insane, remaining in that condition up to the present time, being confined in a private asylum. Upon the retirement of the mother from the head of the household, the defendant succeeded to her place, taking charge of the home and assuming the responsibilities incident to the position. Her relations thus took on the united aspects of a wife and daughter, in so far as the business affairs of the family were involved. The plaintiff, charged with the duty of the support and maintenance of his family, was confronted with the fact of his wife's insanity, thus rendering her incapable of releasing her dower interest in realty which might come into his possession, and for the purpose of making a profitable use of his capital and bettering the condition of himself and family, he entered into an agreement with his daughter to take the title to

the property in dispute, and to transfer the same to himself or to such third parties as he might direct. In pursuance of this agreement the plaintiff. purchased the property, causing the title to be placed in the daughter. He paid a part of the purchase price, and the daughter gave mortgages in which the plaintiff joined to secure the remainder. These mortgages were subsequently paid by the plaintiff, who entered into possession of the property, made improvements, paid the taxes and water rates, collected the rentals, appropriating them to his own uses without protest on the part of the defendant up to the time of the commencement of this action.

The trial court found substantially this state of facts, but decided that no use or trust resulted to the plaintiff by reason of his payment of the purchase money, and that the trust could be proved only by a writing, the alleged agreement with the daughter being oral. It was decreed, however, that the plaintiff be subrogated to the ownership of the mortgages which he had paid and that they be liens in his hands, and that the plaintiff have a "lien for the mortgages and taxes paid by him," and that, unless the amount be agreed upon, it be referred to an attorney to compute and state the same.

The plaintiff appeals from so much of the decision as denies the existence of a trust, and the defendant appeals from that part of the decision which gives the plaintiff a lien upon the property for his mortgage payments, interest, etc.

"There are two principles upon which a court of equity acts in exercising its remedial jurisdiction," says Judge ANDREWS in delivering the opinion of the court in the case of *Wood* v. *Rabe* (96 N. Y. 425), "which, taken together, in our opinion, entitle the plaintiff to maintain this action. One is that it will not permit the Statute of Frauds to be used as an instrument of fraud, and the other that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief. 'The Statute of Frauds,' observes Lord REDESDALE in *Bond* v. *Hopkins* (1 S. & L. 433), 'says that no action or suit shall be maintained on an agreement relating to lands which is not in writing, signed by the party to be charged therewith, and yet the court is in the daily habit of relieving where the party seeking

the relief has been put into a situation which makes it against conscience in the other party to insist on a want of writing so signed, as a bar to his relief.' "

The case now before us clearly comes within these rules. The plaintiff in this action, charged with the duty of providing for himself and family, and of maintaining his unfortunate wife in a private asylum, desired, in the pursuit of his business as a dealer in real estate, to become possessed of certain property in the city of Brooklyn. If he purchased this property, taking the title in his own name, it vested a dower right in his insane wife, who could not release such claim. The result would be that he would have tied up his capital, and would not have been able to give a clear title to a purchaser. In this dilemma he entered into an agreement with his daughter to take the title and to convey the property whenever he should direct, this action being mutually advantageous, and enabling the father the better to provide for the comfort and well-being of his family. This trust could not have been declared in the deed, or in other written agreement, without defeating the very purpose for which it was intended; the moment this plaintiff became possessed of an equitable interest in real estate, that moment the wife became a necessary party to its alienation, and the conveyance of a trustee could not give a clear title. It was absolutely necessary then, if this plaintiff was to make use of his capital in the purchase of this real estate, without putting it out of his power to make use of it to the best advantage in the conduct of his business, that he should find some one whom he could trust with the absolute title. The daughter, who had succeeded to the place of the unfortunate mother in the household, and who had an interest in common with the other members of the family in the success of the business undertakings of the father, became the natural recipient of this confidence, and the plaintiff having, on the strength of this oral agreement, performed his part of the contract in good faith, having parted with his money upon the assurance of his daughter that she would convey the property whenever he should so direct, this agreement being acquiesced in by her for a long period of years, during which time the father regularly collected the rents, paid the taxes, water rates, etc., the defendant cannot now be permitted to make use of the Statute of Frauds to violate the confidence thus reposed,

and to possess herself of the property which was purchased out of the moneys of the father, and to which she can have no higher claim than those of her sister.

The Statute of Uses and Trusts does not inhibit a trust to a party paying the purchase money. It merely declares that no trust results from the payment, and that a grant of real property for a valuable consideration to one person, the consideration being paid by another, is presumed fraudulent as against the creditors, at that time, of the person paying the consideration. (Stat. of Uses & Trusts [1 R. S. 728], §§ 51, 52.) There were no creditors; the plaintiff comes into court and establishes a state of facts which precludes the idea of fraud in so far as he is concerned, and while it is not contended that the trust results from the payment of the purchase money, a court of equity is justified in giving the fact consideration in connection with other circumstances, in determining what its judgment in a given case shall be.

This view of the case was taken by Justice HAIGHT in the General Term of the fifth department, in the case of *Gage* v. *Gage* (83 Hun, 362), where he says: "Section 51 of the Statute of Uses and Trusts (1 R. S. 728) provides that ' where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.' The next section has reference to creditors and has no bearing upon the question under consideration. We do not understand the provisions of this statute to have any application to a case where an express trust has been created or where equities have arisen by the agreement of parties, but that it only has reference to a case in which there exists no express trust or equities other than the payment of the consideration by a person other than the one who takes the title. No trust shall result from that act alone. Bearing in mind this distinction no great conflict will be found in the authorities."

In the case of *Robbins* v. *Robbins* (89 N. Y. 251) the court, speaking through Judge DANFORTH, discusses a case similar in some respects and involving the same principle as the one at bar. Robbins, Sr., purchased a certain plot of land, taking the title in the

name of his employee, Fay, with an oral agreement that it should be conveyed upon his order. Subsequently the father requested Fay to transfer the title to his son. This was done, with an oral agreement between the parties that the son was to hold the property on the same terms and conditions as those under which Fay had held it, the father all the time retaining possession of the estate. Finally the father sold the property to a third party, and took in partial payment a mortgage upon the premises, which mortgage was made payable to the son who conveyed the title. The father took the mortgage and other payments, and the son brought an action to recover the mortgage, claiming ownership because of the title having been vested in him without the formalities prescribed by the statute. In commenting upon this case Judge DANFORTH says: " The plaintiff's application is to the equitable jurisdiction of the court; but a case suggesting fewer considerations likely to influence a court of equity in its favor, or more opposed to the rules and maxims by which such a tribunal must be guided than the one on which he relies, has not been brought to our attention. In the diversity of causes of action it seldom happens that one is found which has no other support than an admitted breach of confidence and violation of trust reposed by a father in his son." Continuing in the same case Judge DAN-FORTH, after quoting the declaration of the court in another case, that " the Statute of Frauds was never intended to prevent a court of equity from giving relief in case of a plain, clear and deliberate fraud," says: " The same principle has been frequently acted upon by this court (*Ryan* v. *Dox*, 34 N. Y. 307; *Wheeler* v. *Reynolds*, 66 id. 227), in both of which cases a full and careful examination was made of the reasons and authorities on which it rests. Indeed, the decisions are all one way. They establish as a fundamental doctrine of a court of equity that the Statute of Frauds was not made to cover fraud. In the cases especially referred to the wrongdoer was forced into court."

The case at bar does not come within the Statute of Frauds; it is a parol agreement fully performed on the part of the plaintiff. He has paid the purchase price of this property, entered into possession, received the rentals and other incomes, paid the taxes, discharged the purchase-money mortgages, making use of the property in his business as a dealer in real estate for the benefit of himself and

family, relying upon the promise of his daughter to reconvey such property upon his order, and the defendant cannot now plead the Statute of Frauds to protect her in the ownership of this property. The transaction took place under circumstances which made it impossible, without defeating the end which was sought, to have the trust appear in writing; under circumstances which peculiarly obligated the daughter to accept the trust, and the plaintiff having parted with the legal title to his property, with no intent to defraud, but to enable him to carry on his business advantageously, and thus to provide for his unfortunate wife and his family, a court of equity would fail in its duty if it refused to decree a specific performance on the part of the defendant of her part of the agreement. This view of the case is fully sustained by the authorities.

The conclusions here reached render it unnecessary to determine the questions involved in the defendant's appeal.

The judgment, in so far as it denies the existence of a trust is reversed, and the defendant is directed to make such conveyance of the property in dispute as the plaintiff may order.

All concurred.

Judgment, so far as appealed from by the plaintiff reversed, and judgment directed in favor of the plaintiff, declaring that the defendant holds all the real estate described in the complaint in trust for the plaintiff, and that the said defendant convey the same to the plaintiff, or to such person as he may appoint, with costs of the action and of this appeal to the plaintiff. Judgment on defendant's appeal affirmed.