(85 App. Div. 154.)

## VEEDER v. HORSTMANN et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. CORPORATIONS—CONTRACTS WITH OFFICERS—VALIDITY.

A contract by a director to execute to the company a lease of property is binding on him, as a director or officer of a corporation is not precluded from entering into contracts with it for his personal benefit where the rights of the corporation are fully protected.

2. SPECIFIC PERFORMANCE—ORAL CONTRACTS—PART PERFORMANCE.

A contract for a lease of realty for a longer period than one year may be specifically enforced, though no memorandum thereof is in writing, where the lessee has entered into possession under the agreement, and expended large sums in permanent improvements.

3. SAME—CONTRACTS BY GRANTOR—ENFORCEMENT AGAINST GRANTEE.

Where a father, having an agreement for the conveyance of property to him, contracts to lease it to a company, which enters into possession, making permanent improvements, and conveys it to his daughters, who have full knowledge of the expenditure made thereon, and that the company was to have a lease of it, specific performance of the agreement will be enforced against the daughters.

Appeal from Trial Term, Schenectady County.

Action by Charles F. Veeder, as receiver of the Horstmann Lumber Company, against Charles F. Horstmann and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

John D. Miller, Jacob W. Clute, and Everett Smith, for appellants. De Remer & Angle (Edwin C. Angle, of counsel), for respondent.

CHASE, J. In April, 1901, the defendant Charles F. Horstmann and others, in contemplation of associating together in a lumber business in the city of Schenectady, had frequent meetings, and discussed the place in which to locate the business, the construction of the buildings, and other details. Different pieces of real property on which to locate the business were examined, and said Horstmann for several days negotiated for the real property described in the complaint, and from time to time talked with his associates in relation thereto. A few days after, he informed his associates that he had entered into a contract to purchase the property for $8,000, and that he had paid $500 thereon. In the latter part of April said Horstmann and the four others associated with him had a meeting, and agreed upon the incorporation of a company to take the property and conduct the business contemplated, and also upon the amount of stock that each should subscribe therein. The certificates of incorporation were then executed, and they were at once duly filed and recorded. Said Horstmann then stated that he had purchased the real property for the lumber company, and he also stated that he would back the lumber company, if necessary, to the extent of $50,000. At the same time, one of the incorporators, in the presence of the others, said, "Mr. Horstmann, I understand you propose to lease this land to the company for the

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 1401, 1402.

period of twenty years at 6 per cent. on your investment?" And Mr. Horstmann said, "Yes." After the incorporation of the company the incorporators met for the election of officers, and at such meeting said Horstmann was elected president. The minutes of the company cannot be found by the plaintiff, but it appears that at the meeting when the officers were elected, and when all the incorporators, including Horstmann, were present, a resolution was duly passed to the effect that the company lease the property in question of Mr. Horstmann for 10 years, with the privilege of 10 more, at the rent of $480 per year (being 6 per cent. on the investment of $8,000), and the company agreed to erect the necessary buildings thereon. On the night of this meeting, Horstmann said to one of the incorporators that he would like to take the title of the real property in the name of his daughters, and let them lease to the corporation for the period of 20 years at a rental of $480 per year, which he said would be a little pin money for them. The real property in question was swampy land. It had to be filled in, and the company entered into the possession thereof, and proceeded to do the necessary filling, at a cost to it of about $5,500. About the 1st of July it commenced the erection of the buildings thereon, and subsequently the machinery was placed therein. The buildings so erected were built in a substantial manner, upon concrete foundations. The engine room was of brick, 30x60 feet, with a smokestack 60 feet in height. There was a large drykiln in connection therewith. The other buildings consisted of one 60x130 feet, with an attachment 30x35 feet, and a shed 20x240 feet. They were completed between the 1st and 6th of October, 1901. The expenditure by the company on said real property amounted to about $47,000. From the time said company commenced to fill said land it was in open and notorious possession thereof. The contract made by Horstmann for the purchase of said property provided that a deed should be delivered and the money paid therefor on the 1st day of July, 1901. In the latter part of June an effort was made by said Horstmann and another of the directors of the company to borrow money to pay the balance of the purchase price remaining unpaid for the land. On the 1st day of July, the money having been borrowed, Horstmann and one of the directors went to the office of the attorneys of the grantor to secure the deed, and a deed was produced, with the name of Charles F. Horstmann therein as grantee. Horstmann objected to paying the money unless the deed contained the name of the defendants Nellie Droege and Lena Horstmann, his daughters, as grantees. The deed was changed and reacknowledged. Horstmann also objected to the form of the description in the deed, and afterwards that was changed. Thereafter one of the directors went to a savings bank in Albany for Horstmann, to obtain a loan on the property. He had with him the deed in which the daughters of said Horstmann were named as grantees. One of the daughters so named as a grantee was an infant, and on the 17th day of September, when the loan was about to be made by said bank, the name of the infant grantee was stricken from the deed, and it was again, and on that day, reacknowledged by the grantor and delivered; and on the 20th day of September, 1901, it was recorded in the office of the clerk of the county

of Schenectady. A loan to Horstmann of $7,000 was obtained on said property from said bank September 20, 1901, and immediately thereafter the defendant Droege gave to the defendant Lena Horstmann a deed of an undivided one-half interest in said property. On the 16th day of November, 1901, said Horstmann had the buildings on said property insured in the name of the company, and caused to be inserted in the policy therefor a statement as follows: "It is understood that the buildings above insured stand on leased land." On the 5th day of February, 1902, the officers of the company, being unable to obtain said lease, had a meeting with its creditors, and an agreement was entered into extending the time of the payment of its indebtedness, which agreement was also signed by said Horstmann, and included in said agreement was a clause as follows:

"It is especially understood and agreed however that the above provisions are null and void unless Charles Horstmann, a member of said corporation, shall give, or cause to be given a lease to said corporation of the lands and buildings occupied by said corporation for the period of ten years with the privilege of ten more at the now existing rental which the said Horstmann agreed to do at once." Also: "The consideration of the above provisions is the giving or the causing of said lease to be given by said Horstmann he having originally agreed to give said lease to said corporation."

The lease not having been given, on the 17th day of February, 1902, the plaintiff was duly appointed receiver of said company, in proceedings instituted by a majority of its directors for a voluntary dissolution of said company.

The reason for said Horstmann's desire to have the title of said real property in the name of his daughters, in preference to taking the same in his own name, may be imagined from the testimony of his wife, with whom he is not living, in which she says he told her that he had bought the real property in question on the 20th of April for the lumber business, and had paid $500 thereon to bind the bargain, and that in June—

"He asked me to sign off the deed from the lumber yard. He said he wanted to give that property to his daughters. I said I was satisfied. I said I wanted to know first which way to live. He did not provide for me. A couple of weeks afterwards he said he fixed it all right without my signature, but that it cost him $30. I did not sign it. He said it was not in the county clerk's office yet, so he could fix it all right without my signing, but it cost him $30."

Horstmann, when he entered into the agreement with the company to execute to it a lease, had an interest in the property in question under the contract made by him with the owner for a conveyance thereof. He then not only had it in his power to obtain the legal title to the property, but was obligated on his part to accept the same in performance of the conditions of his contract. The contract so made by him with the company was binding upon him. A director or officer of a corporation is not precluded from entering into contracts with it for his personal benefit, where the rights of the corporation are fully protected. It is well settled that such contracts, especially where the corporation is represented by a majority of the board of directors, exclusive of the party interested, are not void, but merely voidable at the suit of the corporation or persons claiming through it. Am. & Eng. Ency. of Law, vol. 21, p. 899.

The appellants insist that the contract cannot be enforced, for the reason that a lease of real property for a longer period than one year is void unless the contract, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the lessor. Real Property Law (Laws 1896, p. 602, c. 547) § 224. It is, however, provided by section 234 of the real property law (Laws 1896, p. 605) that "nothing contained in this article abridges the powers of courts of equity to compel specific performance of agreements in cases of part performance." The company not only entered into possession of the real property under said agreement, and remained in the exclusive possession thereof, but expended large sums of money in permanent and substantial improvements. Where improvements are substantial and permanent in character, and are such as would not have been made, except in reliance on the contract, specific performance will be decreed. Cooley v. Lobdell, 153 N. Y. 596, 47 N. E. 783. Where the circumstances are peculiar and exceptional (Dunkel v. Dunkel, 141 N. Y. 427, 36 N. E. 405), and where, in case the contract is not carried out, it will result in a fraud upon some of the parties to the contract, equity should and will lend its aid to defeat the fraud.

Chancellor Kent, in Parkhurst v. Van Cortlandt, 1 Johns. Ch. 273, said:

"The ground of the relief in chancery is the fraud in permitting a parol agreement to be partly executed, and in leading on a party to expend money in the melioration of the estate, and then to withdraw from the performance of the contract."

Where a contract has been partly performed by acts which are not only exclusively referable to the contract, but are of such a nature that, if the contract should not be performed, the person would be practically defrauded by reason of the acts which he had done in part performance of the contract, and in reliance upon it, specific performance should be decreed. Everdell v. Hill, 58 App. Div. 151, 68 N. Y. Supp. 719; Canda v. Totten, 157 N. Y. 281, 51 N. E. 989; Quinn v. Quinn, 69 App. Div. 598, 75 N. Y. Supp. 83. Such equitable power is frequently exercised. Young v. Overbaugh, 145 N. Y. 158, 39 N. E. 712; Lobdell v. Lobdell, 36 N. Y. 327; Wendell v. Stone, 39 Hun, 382; Traphagen v. Burt, 67 N. Y. 30; Gibbs v. Horton Ice Cream Co., 61 App. Div. 621, 71 N. Y. Supp. 193; Canda v. Totten, 157 N. Y. 281, 51 N. E. 989.

Where there has been part performance of an oral agreement to convey land, as by the purchaser entering into possession and erecting a building upon it, so as to take it out of the statute of frauds, the assignee of the agreement may maintain an action for its specific performance by the vendor. Dodge v. Miller, 81 Hun, 102, 30 N. Y. Supp. 726.

A recital of the facts herein appeals to the court with much force for the exercise of its equitable power to protect the rights of the persons interested through the plaintiff. The defendants Doerge and Lena Horstmann have no superior equity. They are not in a position to claim that the title ever passed from their grantor prior to September 17, 1901. Therefore substantially the entire expenditure made by the company on the real property in question was made by it

while the equitable title to the property was in Horstmann, and such expenditure was clearly made in reliance upon the contract with Horstmann, and with the expectation that he would in good faith keep said contract on his part. The defendant Lena Horstmann was present at many of the interviews between the promoters of the company when the organization of the company, the purchase of the real property in question, and the ultimate leasing of the same to it, were discussed; and the defendants Doerge and Lena Horstmann were present on the real property in question from time to time when the same was being prepared for the buildings, and when the buildings were being erected and the machinery placed therein. They took whatever title they have to the property with full knowledge of the expenditure made thereon by the company, and the trial court has found that they took such title with the understanding that said company should have a lease of the same for 10 years, with the right to renew the same for a further term of 10 years, which finding is fully supported by the pleadings and evidence.

Where the specific execution of an agreement respecting real property will be decreed between the parties, it will be decreed between all the parties claiming under them in privity of estate, unless other controlling equities intervene. Am. & Eng. Ency. of Law (1st Ed.) vol. 22, p. 234; Murphy v. Whitney, 140 N. Y. 541, 35 N. E. 930, 24 L. R. A. 123; Hay v. Knauth, 169 N. Y. 298, 62 N. E. 395; Gage v. Gage, 13 App. Div. 565, 43 N. Y. Supp. 810.

Infants and their property are subject to the inherent original jurisdiction of equity. Pomeroy's Equity Jurisprudence, § 1303, etc.

Whether Horstmann is treated as the agent for his daughters, or as the assignee to them of the contract to purchase, they are equally bound with him to carry out the agreement made by him with the company.

The judgment should be affirmed, with costs. All concur.