### McCARTNEY et al. v. TITSWORTH et al.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1907.)

1. LIFE ESTATES—ACTS CONSTITUTING WASTE—TREES AND TIMBER.

Where defendant, having a life estate in land, removed the wood and timber therefrom, his act constituted waste under Code Civ. Proc. § 1655, relating to actions for waste against the tenant of a particular estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Life Estates, § 42.]

2. SAME—FORFEITURES.

In an action against a life tenant for waste by the person next entitled to the reversion, under Code Civ. Proc. § 1655, relating to actions for waste against the tenant of a particular estate, where it was shown that the damages exceeded the value of the life estate, the court correctly declared the interest of the life tenant terminated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Life Estates, § 9.]

3. WASTE—DAMAGES.

Under Code Civ. Proc. § 1655, relating to judgment in actions for waste against the tenant of a particular estate, where the action was brought by the person next entitled to the reversion against the life tenant and plaintiff recovered, the court properly awarded him treble damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waste, § 49.]

4. SAME.

In an action for waste, the correct measure of damages was the difference in the value of the farm before and after the waste was committed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waste, § 44.]

5. APPEAL—REVIEW—HARMLESS ERROR.

In an action for waste committed by permitting the removal of the timber from land, it was not reversible error to admit evidence of the sale of the timber and of its amount and value.

6. WASTE—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action against the husband for waste committed on real estate devised to him for life by his deceased wife, evidence examined, and *held* insufficient to authorize any finding of part performance of an oral agreement by the wife to convey the land to him, or of fraud on her part so as to confer upon him the equitable title to the land or the right to specific performance of the parol contract to redeed the same to him.

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Allegany County.

Action by Sheldon McCartney and others against Josiah E. Titsworth and another. From a judgment for plaintiffs, defendant Titsworth appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles D. Newton, for appellant.

Milton E. Gibbs and A. J. Hibbard, for respondent.

WILLIAMS, J. The judgment and order should be affirmed with costs.

The action was brought to recover damages against the defendant Titsworth for waste, and to declare his life estate forfeited by reason of such waste, under section 1655, Code of Civil Procedure. The wife of the defendant Titsworth acquired title to the property in question by deed March 20, 1863, and held such title until her death, August 3, 1901. She left at her death seven grandchildren, six named Gilman and one McCartney. She made a will, executed April 1, 1889, giving and devising to her husband all her real and personal estate, to be held and enjoyed during the term of his natural life, and after his death the remainder to her said grandchildren, and appointing her husband executor. During the lifetime and at the time of the death of the wife, her husband was living upon the farm with her, and has remained in occupation thereof ever since. When she died, 225 of the 360 acres of the farm were wood and timber land. In December, 1902, and December, 1904, the husband, the defendant Titsworth, sold and caused to be taken from the farm all the valuable timber thereon. In May, 1905, this action was brought by the grandchildren. The trial was had in June, 1906, and resulted in a verdict for damages $3,000, and fixing the value of defendant's life estate at $700. The damages were trebled under the statute, and judgment entered for $9,000 and costs; and, the value of the life estate being less than the damages, the interest of the defendant as life tenant was forfeited and terminated by the judgment. Under the will the husband, defendant, took only a life estate in the property, and the removal of the wood and timber constituted waste. The correct rule as to the measure of damages was stated by the court to the jury to be the difference in value of the farm before and after the waste was committed. It was not reversible error to permit the contracts for the sale of the timber to be in evidence and proof to be given of the amount and real value

of the timber that was removed. The verdict was a very moderate one, and in no manner excessive.

The serious questions on this appeal relate to the affirmative defense interposed by the defendant, and the exclusion of his evidence offered to establish the same. It appeared from such evidence as defendant was permitted to give that Samuel Rail was the owner of this farm in 1856, and on May 16th of that year he and his wife gave a mortgage thereon for $1,600 to the defendant Titsworth, that this mortgage was foreclosed, judgment was entered thereon September 2, 1860, a sale of the premises was made, and the farm was deeded thereunder, March 20, 1863, to defendant's wife; the deed, among other things, containing the recital:

"At which sale [on the foreclosure] the premises hereinafter described were struck off to Josiah E. Titsworth [the husband] for the sum of $596.21, that being the highest sum bidden for the same, and whereas the said Josiah E. Titsworth desires and has requested said sheriff to deed and convey said land and premises to Eleanor M. Titsworth [the wife]," etc.

This deed was recorded soon after it was taken. The defendant then offered evidence tending to prove that while he and his wife lived on the farm, and between 1884 and 1898, he collected rent for the farm from tenants; that he made improvements thereon, built a house and repaired the barn, the buildings being upon stone foundations and becoming a part of the freehold, the improvements being of the value of $7,000; and that he laid some tile for draining the property and paid for the same. This evidence was objected to and excluded, and the defendant excepted. Defendant also offered evidence tending to prove that the wife about 1865 said that she had a deed of the farm, but her husband had paid for it, and she had agreed to deed it to him any time, and this evidence was objected to and excluded, with exception to defendant. This evidence was designed to prove the defense set up in the answer, which was, in brief, that the husband in 1863 paid the full purchase price for the farm and requested and directed the deed under the sale on the foreclosure judgment to be given to the wife, pursuant to an understanding that she should hold the title in trust only, and should convey the farm to him upon his request, and that this arrangement was made for the purpose of protecting him in a large number of business and financial operations in which he was then interested, and to provide a home for him in his old age and infirmity, provided such operations should terminate unsuccessfully, and that immediately after such purchase he made improvements on the farm, and in so doing expended large sums of money; that he has ever since the purchase of the farm exercised every right of ownership thereof, to the exclusion of his wife and every other person, and that she contributed nothing to the purchase price thereof, or the improvements thereon, and has not exercised any act of ownership or control of the farm, etc.; and that he never prior to her death requested her to convey the same to him. It will be observed that these allegations in the answer are somewhat broader than the facts offered to be proved. We must pass upon the question of the admissibility of the evidence offered, and not upon the sufficiency of the defense upon all the allegations thereof. The question, therefore,

strictly is whether the evidence offered would, if admitted, taken in connection with the other evidence already in the case, have established any defense to the action. We may consider the allegation in the answer as to the purpose of placing the title to the farm in the wife, if it appears that such purpose was fraudulent and therefore not enforceable by him. We may take that purpose as established so far as it tends to defeat his rights, but not to uphold his alleged defense. The purpose seems to have been to cover up this property so that he could have the benefit of it, to the exclusion of the rights of creditors if large business and financial operations in which he was at the time engaged should prove unsuccessful. It is not, however, alleged that he had any then existing creditors or was then owing any debts which might be attempted to be enforced against him or procured to be paid from this farm. If no such creditors or debts then existed, we see no reason why, having openly placed the title to the farm in his wife, he might not do so for the purpose alleged without being charged with any intent to hinder, delay, or defraud creditors. There is no proof there were such debts or creditors, and we cannot presume anything beyond the actual allegations of the answer in question. We cannot, therefore, regard the purpose as illegal so as to defeat any rights he would otherwise have under the arrangement for putting the title to the farm in his wife's name. The main contention by the plaintiff, and apparently the holding by the trial court, was that the facts proved and sought to be proved created no trust in the property for the benefit of the husband and no equitable title in him thereto. Various provisions of the real property law are referred to by counsel, but this arrangement was made in 1863, long before the passage of that law, and cannot therefore be affected by the provisions of that law. The statute of uses and trusts was in force when this transaction took place in 1863. It was a part of the original Revised Statutes, which took effect in 1830 (1 Rev. St. 728), and was not repealed until 1896, when the real property law was passed. The sections of the Revised Statutes in force in 1863 relating to the alleged trust were sections 51, 52, and 53, and were as follows:

"Sec. 51. Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.

"Sec. 52. Every such conveyance shall be presumed to be fraudulent as against the creditors, at that time, of the person paying the consideration; and when a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their demands.

"Sec. 53. The provisions of the preceding section 51 shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration, or where such alienee, in violation of some trust, shall have purchased the lands so conveyed with moneys belonging to another person."

The real property law (chapter 547, p. 559, Laws 1896), having repealed these provisions of the Revised Statutes, replaced them with the provisions contained in section 74 of that law. These provisions are in somewhat different language than those of the Revised Statutes,

but the statutory revision commission reported to the Legislature that the law remained unchanged in substance. The Revised Statutes as to the creation of estates and trusts, etc., in real property, provided (2 Rev. St. 134, 135, 137, §§ 6, 7, 2):

"Sec. 6. No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power, over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

"Sec. 7. The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will or testament; nor to prevent any trust from arising, or being extinguished, by implication or operation of law; nor to prevent, after a fine shall have been levied, the execution of a deed or other instrument in writing, declaring the uses of such fine."

"Sec. 2. Every grant or assignment of any existing trust in lands, goods or things in action, unless the same shall be in writing, subscribed by the party making the same, or by his attorney, lawfully authorized, shall be void."

These provisions were replaced in the real property law in 1896 by the provisions of section 207 of that law, and the revision commissioners reported that the Revised Statutes had been left unchanged in substance. The Revised Statutes contained another provision following sections 6 and 7 above, as follows:

"Sec. 10. Nothing in this title contained shall be construed to abridge the power of courts of equity to compel the specific performance of agreements, in cases of part performance of such agreements."

This section was replaced by section 234 of the real property law, in language substantially the same.

There are very many cases in the books relating to these statutes, construing them, and determining the rights of parties thereunder upon facts appearing in those cases. And it is somewhat difficult to deduce from those decisions any general principles of law that are applicable to the facts of this case and controlling in settling the rights of the parties here. Some of the cases referred to were determined under section 10 of the statute above and specific performance decreed, by reason of a part performance of an agreement. We are unable to see how the defendant here can succeed upon this theory. The making of the improvements could hardly be regarded as part performance of any agreement between the parties, at the time the deed was given or at any other time, that the farm should be redeeded to defendant in consideration of his making such improvements. He and his wife were living together on the farm, and he managed and looked after the same and took the rents and profits and paid the taxes, as a husband would usually do under such circumstances. He expected to have the benefit of the farm, very likely, when he made the improvements, but the agreement to redeed it to him was by parol, and as a mere agreement it could not be enforced. It was void under the statute, and the fact that the wife after the deed was given said she had agreed to redeed it to her husband gave no validity to the agreement otherwise void under the statute. We fail to see how any of the

evidence offered was admissible as establishing a defense upon this theory.

Most of the cases in the books have involved the question of fraud; the general proposition being that courts of equity will not permit the statute of frauds to be used as a shield for the commission of a fraud by the party holding the title upon the party claiming an interest in the property. In many of the cases there was fraud in obtaining the title, often growing out of confidential relations between the parties. Nothing of that kind appears in this case. The wife did not procure the deed to be given to her with any fraudulent purpose, or for any purpose beneficial to herself. The husband did it, not for her benefit, but for his own benefit. He so alleged in his answer; and it is not controverted here. If there was or is any fraud here, it, grows out of the fact that the wife did not redeed the farm to defendant, and her heirs since her death have so refused. But she was never asked to redeed. The defendant voluntarily caused the farm to be deeded to his wife, and permitted it to remain there all her life and until she died, without any objection whatever. The fraud, therefore, if any exists in the case, grows out of the refusal, since her death, by her heirs to redeed the property to defendant, and their resistance in this action to his claim of an equitable title thereto. In other words, the claim is substantially that the wife having agreed by parol to redeed the property to him, and he, acting upon the supposition that she would carry out that agreement, though it was absolutely void, having made valuable improvements upon the farm, it would be a fraud upon him to withhold the title from him now. We have examined all the cases cited by counsel in his brief, and many others to be found in the books, and we do not find sufficient warrant for holding such a proposition here. Sturtevant v. Sturtevant, 20 N. Y. 39, 75 Am. Dec. 371. The court refused to uphold such a parol agreement, and to decree a trust. Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696. The court upheld a parol arrangement upon the ground of part performance, under section 10 of the statute above, and that fraud would be effectual upon any other disposition of the case. Levy v. Brush, 45 N. Y. 589. The court refused to uphold a parol agreement, and decree a trust. Wheeler v. Reynolds, 66 N. Y. 227. The court refused to uphold an agreement on the theory of part performance under section 10 of the statute above, and refused to uphold the agreement as a parol trust, or a trust ex malificio by reason of fraud. The theory upon which courts of equity afford relief in these cases was very clearly stated in this case, viz.:

"It is a mistake to suppose that parol agreements relating to lands are any more valid in equity than at law. They are always and everywhere invalid. But courts of equity have general jurisdiction to relieve against frauds, and where a parol agreement relating to lands has been so far partly performed that it would be a fraud upon the party doing the acts, unless the agreement should be performed by the other party, the court will relieve against the fraud and apply the remedy by enforcing the agreement. It is not the parol agreement which lies at the foundation of the jurisdiction in such case, but the fraud. So in reference to parol trusts in lands. They are invalid in equity as in law. But in a case of fraud courts of equity will sometimes imply a trust ex maleficio for the purpose of administering a remedy against the fraud. For the same purpose, it will take the trust which the parties have

attempted to create and enforce it; and in such case the fraud, not the parol agreement, gives the jurisdiction." Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640.

The court upheld a parol agreement on the ground of fraud, growing out of confidential relations between a son, his mother, and his former guardian. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067. The court impressed a parol agreement as to lands and impressed trust thereon by reason of fraud, growing out of confidential relations between a mother and her children. Gould v. Gould, 51 Hun, 9, 3 N. Y. Supp. 608 (5th Dept., Gen. Term). The court refused to uphold a parol agreement by a wife to redeed land to her husband, where the facts were very similar to those in the present case. There was the deeding to the wife, the agreement to redeed, the absence of fraud in procuring the deed, the leasing and managing of the property by the husband after the deed was given, improvements on the property by erecting buildings, etc., to the extent of $2,000. The parties separated. The husband sought to compel reconveyance, and was defeated. Gage v. Gage, 83 Hun, 362, 31 N. Y. Supp. 903 (5th Dept., Gen. Term). The court upheld an agreement to deed land, upon the ground of part performance. The parties to the agreement were husband and wife. The property, a farm, was deeded to the wife, under the agreement that they should both live on the farm, work the same, and together pay the purchase price, and after fully paid for the wife would deed the husband an undivided one-half thereof. They carried out this agreement until the farm was fully paid for, and then the wife refused to make the deed. The court concluded that to permit her to retain the whole title would be to invoke the statute to cover her fraud. Hutchinson v. Hutchinson, 84 Hun, 482, 32 N. Y. Supp. 390 (2d Dept., Gen. Term). The court refused to uphold a parol agreement to reconvey land; there being no fraud charged, but the proof being that the plaintiff was told her interest would be the same after or before the deed was given by him. The parties were brother and sister. Smith v. Balcom, 24 App. Div. 437, 48 N. Y. Supp. 487 (4th Dept.). The court upheld a parol agreement to deed lands, on the ground of fraud, saying that the circumstances showed a wrong, "but little if any short of gross fraud." Jeremiah v. Pitcher, 26 App. Div. 402, 49 N. Y. Supp. 788 (2d Dept.). The court decreed specific performance of a parol contract to convey lands, by reason of fraud, growing out of confidential relations between a father and daughter. Bullenkamp v. Bullenkamp, 34 App. Div. 193, 54 N. Y. Supp. 482 (2d Dept.). The court refused to uphold a parol agreement and compel a reconveyance of property because there was no fraud found, and no confidential relations established, out of which fraud could have grown. No findings on this subject by the trial court. This case was again before the court and reported in 43 App. Div. 510, 60 N. Y. Supp. 84, after a finding of fraud by the trial court, and the court on appeal held there was no justification in the evidence for such finding, and the relief sought was denied. Veeder v. Hortsmann, 85 App. Div. 154, 83 N. Y. Supp. 99 (3d Dept.). The court upheld a parol promise to give a 20-year-

lease, upon the theory of specific performance of a contract partly performed.

It seems to us, upon principle and authority, the evidence offered by defendant and excluded was insufficient to authorize any finding of part performance or fraud, so as to confer upon him the equitable title to the farm, or the right to specific performance of the parol contract to redeed the same to him. The court, therefore, properly excluded such evidence.

It may further be suggested that the claim of equitable title is a stale one, which a court of equity would hardly aid the defendant to establish. The deed to the wife was given and title has been held by her 38 years before her death, and it was more than 4 years after her death that the claim was first made by the defendant in this action. See McKechnie v. McKechnie, 3 App. Div. 91, 39 N. Y. Supp. 402 (4th Dept.); Town of Mt. Morris v. King, 8 App. Div. 495, 499, 500 (4th Dept.), 40 N. Y. Supp. 709, affirmed 158 N. Y. 450, 456, 457, 53 N. E. 214; Hutchinson v. Hutchinson, 84 Hun, 482, 487, 32 N. Y. Supp. 390.

We do not deem it necessary to discuss in this opinion any other questions suggested by counsel in their briefs.

Judgment and order affirmed, with costs. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent.


KRUSE, J. (dissenting). The question presented by this appeal is whether the oral agreement made between the defendant Josiah E. Titsworth and his wife, whereby she agreed to take title to the lands in question and convey the same to him at any time upon his request, is enforceable and constitutes him the equitable owner of the lands. The solution of that question depends upon whether what was done by the husband under and in reliance upon the agreement was sufficient to take it out of the statute requiring such an agreement to be in writing.

I think we must assume from the proof that was offered and the rulings made that the defendant Josiah E. Titsworth could have established the facts set forth in his answer. It appears that the premises were bid in by Titsworth upon a foreclosure of a mortgage owned by him, he paying the consideration of $596.20 therefor, and that at his request the same were conveyed by the sheriff to his wife under the agreement as stated. It also appears, among other things, that he entered into possession of the lands; that his wife never made any claim thereto; that he expended large sums of money in clearing and improving the premises, building dwellings, and other buildings thereon, and made other permanent improvements thereon, amounting in all to about $7,000 in value; that he exercised the right of ownership of the lands, to the exclusion of his wife and every other person; that he controlled the same, paid the taxes, leased and disposed of the right to cultivate, and received the proceeds thereof; that his wife did not contribute to the purchase price of the premises, or in any way toward the reclamation, cultivation, or improvement of the same; that she never exercised any acts of ownership or control over the premises, and

was always ready and willing to reconvey the premises to her husband upon his request; that she died on or about August 3, 1901, without having reconveyed the premises to her husband and without his having made any request to convey the same to him.  While she made a will, she did not specifically devise the premises or in any manner assume to have any interest therein.  The plaintiffs claim their right to the premises under the residuary clause contained in her will, which gives and bequeaths to her husband all of her estate, both real and personal, during the term of his natural life, and from and after his death gives all the remainder of her estate both real and personal to certain grandchildren, who now seek to hold Titsworth liable for waste in cutting timber upon the premises.

We agree with the learned trial justice that there was no resulting trust to the husband from the mere payment by him of the purchase price of the land, and clearly the oral agreement itself was void under the statute.  But the husband does not rest his claim upon the payment of the purchase price and the oral agreement alone.  He not only paid the purchase price, but he entered into possession of the lands, and has ever since occupied them himself or by his tenants, covering a period of upwards of 50 years.  During that time he made permanent and valuable improvements thereon, clearing, ditching, and constructing buildings, so that the premises which were sold on the foreclosure sale for a few hundred dollars have become very valuable.  During all this time his claim of ownership was never questioned, until after the death of his wife.  To permit the grandchildren under these circumstances to invoke the aid of the statute and take from him the savings of a lifetime would enable them to make a use of the statute which ought not to be permitted.  Its purpose was to prevent fraud, not to make it an instrument for perpetrating a wrong.  Had the purchase been direct from the wife, she receiving the purchase price direct from her husband, and agreeing to convey to him the premises upon demand, would there be any question that the husband, after taking possession of the land, making permanent and valuable improvements thereon, and doing what he has done in this case, could require the performance of that contract?  I can see no difference in principle between such a case and one like this, where the title passes to the wife and is held by her for the purchaser under such an agreement.  In either case the vendee is the equitable owner.

The case of Gage v. Gage, 83 Hun, 362, 31 N. Y. Supp. 903, presents a state of facts very similar to those in this case.  In that case it appeared that the plaintiff and his wife purchased real estate, the title being taken in the name of the wife under an agreement that the two should live upon the farm, working the same together and paying the purchase price thereof.  When paid for, the wife was to deed an undivided half to her husband.  He performed the agreement in working the farm and paying for it.  For the purpose of depriving him of his interest in the property, she conveyed to a third party without consideration, and the husband thereupon brought the action against his wife and her grantee to set aside that conveyance and to require the conveyance of an undivided half to him.  The complaint was dismissed at the trial, and, an appeal having been taken to the General

Term of the Supreme Court, the judgment was reversed. Judge Haight, writing for the court in that case, distinguishes that case from those cases where there is no agreement between the parties creating a trust, or other equities aside from the bare payment of the consideration money. As regards the case of Gould v. Gould, 51 Hun, 9, 3 N. Y. Supp. 608, he states that it may be in apparent conflict, but that this distinction does not appear to have been called to the attention of the court, or considered by it. The plaintiff ultimately succeeded in the Gage Case. It was again before this court and the judgment in favor of the plaintiff was affirmed. 13 App. Div. 565, 43 N. Y. Supp. 810. The cases of Smith v. Balcom, 24 App. Div. 437, 48 N. Y. Supp. 487, and Jeremiah v. Pitcher, 26 App. Div. 402, 49 N. Y. Supp. 788, are also very similar to this case, and contracts of a like character were upheld.

It does not seem necessary or profitable to enter into an extended discussion of the various decisions in this state upon this question. I think the evidence offered was improperly excluded and that the defendant should have been permitted to make proof of the agreement between himself and his wife relating to the lands in question, and other facts set forth in the answer. If I am right, it follows that the judgment and order should be reversed, and a new trial granted.