Allen Murray Myers, J.
This is a holdover proceeding to recover commercial premises. The petition alleges that: “ the tenant * * * entered into possession of the premises under an oral rental agreement made on or about the 1st day of September 1963 * * * for the term of one month and continued therein under the terms of the original .agreement, the last month commencing on the 1st day of November 1968 and ending on the 1st day of December 1968 (pursuant to a 30 day notice terminating the monthly tenancy). ’ ’
On the other hand, the tenant alleges that it took possession under an oral lease for 10 years from September 1, 1963 to August 31, 1973, at an annual rental of $7,800 plus an annual charge of $100 for gas and water together with the obligation to maintain at its own expense one half of the building and one of two elevators (the leased premises). The tenant argues that *460 part performance saves the 10-year oral lease from the proscription of the Statute of Frauds under subdivision 4 of section 5-703 of the General Obligations Law; and further that the common-law doctrine of “ equitable estoppel ’’should be invoked to defeat this proceeding.
The court can find no support in the record for the landlord’s position. The testimony makes it abundantly clear that the parties had agreed that, in consideration for the finding of the building in question by an officer of the tenant, the landlord would, if it purchased the building, do the following: (1) give the tenant at cost, a 10-year lease to one half of the building consisting of the second and third floors, the basement, part of the ground floor and platform, and the use of one of two elevators; (2) have a certain restriction on the building removed for the benefit of the tenant; and (3) permit the tenant to rip out certain tanks, install freezing and cooling units, and make other improvements necessary in the tenant’s import and export business. The landlord further agreed that the annual rental would be one half of its actual annual carrying charges for the building.
The facts are that the landlord purchased the building on August 2, 1963, that the tenant’s representative was present at the title closing, that the landlord did have the restrictions removed for the tenant’s benefit and did offer the tenant a 10-year written lease of the afore-mentioned space from September 1, 1963 to August 31, 1973, at an annual rental of $7,800, which did represent one half of the actual annual carrying charges.
The landlord permitted the tenant to enter into possession on September 1, 1963, before the lease was prepared, accepted and signed. Although the lease was never signed, the tenant was permitted to make extensive improvements costing about $20,000. It was permitted to occupy said premises for almost six years for an annual rental of $7,800 which it paid in installments of $1,300 every two months plus $100 annually for gas and water. Under these circumstances, the contention that the tenant occupied those premises under an oral agreement for one month is incredible.
In an attempt to buttress its claim of a monthly tenancy, the landlord’s Mr. Lam testified that, “ maybe several months after the drafting of the lease * * * either (in) a telephone conversation or a meeting. I don’t remember,” he said to the tenant’s Mr. Chen, “ There is no lease signed and we have to treat it like á month to month basis,” to which Mr. Chen replied, “We are friends and we can work the thing out. It is not necessary to have a lease ”. This testimony is rejected by the court. It is vague, inconclusive, unconvincing and a self-serving *461 legal conclusion which is completely contradicted by a preponderance of the credible evidence in the case.
The court has considered section 232-c of the Real Property Law in relation to the landlord’s claim of a monthly tenancy. It finds that section inapplicable because this is not a case ‘ ‘ where a tenant whose term is longer than one month holds over after the expiration of .such term,” and even if it were under that section only the landlord is precluded from holding the tenant for a new term “ solely by virtue of the tenant’s holding over.” The statute does not automatically convert a year-to-year tenancy into a month-to-month tenancy and it always allows the parties, by agreement, either actual or implied, to create a term other than a tenancy from month to month.
The tenant’s claim of a 10-year oral lease is also unsupported by the testimony. An examination of the final draft of the proposed written lease, with its 35 printed paragraphs and 6-page rider with its 15 additional paragraphs, demonstrates how carefully .the tenant’s rights were protected by its able general counsel. The lease rebuts any contention that either the landlord or the tenant ever intended or would have entered into an ‘ ‘ ora] ’ ’ 10-year lease. It is incredible to accept the tenant’s contention that all of the terms of the final draft of the written lease were agreed to orally (except the subordination clause) before it entered into possession and that the tenant subsequently agreed to reduce the terms of the oral lease to writing only as an accommodation to the landlord, at his request, to aid him in obtaining a mortgage.
Since both parties were thoroughly experienced businessmen, represented by counsel, one can only conclude that the parties intended a valid written lease, protecting both sides against the many contingencies which might arise over a 10-year period. The facts that no oral lease was ever mentioned and that conferences were held for the purpose of drafting a written lease, lend credence to this view.
On November 11, 1963, the landlord offered the tenant the final draft of a written lease which the tenant refused to sign unless the subordination clause was removed. Thus no lease was ever consummated, either oral or written, and there was no agreement to be validated and enforced either in equity or at law by part performance under subdivision 4 of section 5-703 of the General Obligations Law.
In order to invoke the doctrine of equitable estoppel, the Court of Appeals in Rindge v. Baker (57 N. Y. 209, 218) stated that the following elements must be present: “ (1.) The act of parol performance must be referable to the alleged agreement and no *462 other. (2.) They must be such as render it a fraud on the defendant, to take advantage of the contract not being in writing. (3.) The agreement to which they refer must be such as in its own nature is enforceable by the court. (4.) There must be proper evidence of the parol agreement. (Fry on Specific Performance [Am. ed.], 251.)”
These elements, so clearly elucidated in 1874, apply equally today. In Triple Cities Constr. Co. v. Maryland Cas. Co. (4 N Y 2d 443, 448) the court held that: “ An estoppel * * * ‘ rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. ’ (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205.) Indeed, ‘ A party may not, even innocently, mislead an opponent and then claim the benefit of his deception ’ (Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293 * * *.)”
The requirements to invoke an estoppel may be narrowed down to the existence of an actual agreement and some overreaching (not necessarily fraud) on the part of the party against whom the estoppel is sought to be invoked, which imposes an unfair onesidedness to the transaction. (See McKinley v. Hessen, 202 N. Y. 24; Veeder v. Horstmann, 85 App. Div. 154.)
These elements are not present in the instant case. Neither party has testified to a completed agreement, oral or written. Terms remained to be negotiated. There was no overreaching. Neither side misled the other. The tenant knew enough to reject a lease of 50 clauses because one clause, the subordination clause, was unacceptable to him. In 1900, in Franke v. Hewitt (56 App. Div. 497), equity refused to intervene in an action factually quite similar to the one at bar. There too, the parties had an informal, incomplete oral agreement for a 10%-month lease as a result of which the tenant made many expenditures. At page 501, the court stated: “It is not to be denied that where a tenancy can be created by an oral agreement and the parties have agreed upon all the terms, nothing being left to be done except to put them in writing, the letting would be complete though the stipulated lease were never signed. (Wilbur v. Collin, 4 App. Div. 418.) ” However, the court refused to enforce an agreement in equity which it found to be only a bare outline for the leasing of substantial property and where from all the evidence the parties obviously intended a more complete and formal agreement in writing.
The same situation exists in the case at bar. The mere fact that the tenant entered into possession without a written or oral lease, made various improvements at an expenditure of approxi *463 mately $20,000, and remained in the premises for almost six years, does not in and of itself warrant the application of the doctrine of equitable estoppel.
After the abandonment by the parties of any attempt to close the lease, there is no question that the subsequent course of conduct evolved into a tenancy agreement. The entry on the premises was pursuant to an informal oral agreement, barred by the Statute of Frauds. The tenancy created in such circumstances is a tenancy at will (Loughran v. Smith, 75 N. Y. 205; 2 Rasch, Landlord and Tenant and Summary Proceedings, § 1025).
A tenancy at will may be converted into a periodic tenancy, in this case from year to year, where the tenant remains in possession of the premises, with the consent of the landlord under such circumstances as would permit the inference of such a tenancy (Talamo v. Spitzmiller, 120 N. Y. 37). The reservation of rent, on a yearly basis, readily permits such an inference (Adams v. City of Cohoes, 127 N. Y. 175; Coudert v. Cohn, 118 N. Y. 309). The fact that rent is actually paid more frequently has no bearing upon the characterization of the tenancy. In Adams v. City of Cohoes (supra), the annual reserved rental was paid semiannually. Similarly, in the case at bar, the rental was reserved on an annual basis, payable monthly and actually paid bimonthly. The landlord continued to accept rent on this basis for six years. Under these circumstances, it is absurd to contend that the tenant was in the premises on a month-to-month basis.
O’Toole v. Crane & Clark (245 App. Div. 824, affd. 270 N. Y. 559) is a case, in relevant part, quite similar to the one at bar. In that case the court upheld a charge that the jury might find a year-to-year tenancy if there was an entry under an invalid five-year lease. There, the plaintiff and defendant entered into a written agreement to, among other things, lease the defendant’s mill to plaintiff for a period of five years. The agreement specifically provided that it was “ only tentative and will be subject to formal drawing up in a legal manner.” (See Reporter’s notes in the Court of Appeals no opinion affirmance, p. 560.) Plaintiff entered the premises prior to the formalization of the agreement which it ultimately refused to sign. Plaintiff continued to occupy the premises under the informal agreement for three years and was then evicted. Among other causes of action, it brought one in wrongful eviction. In that cause, the Appellate Division upheld the right of the jury to infer an annual tenancy and was affirmed by the Court of Appeals.
*464 Accordingly I find that respondent is in possession of the premises as a tenant from year to year, from September 1 to August 31; and that it is entitled to six months’ notice of termination (Pugsley v. Aikin, 11 N. Y. 494). Since the current yearly term will not end until August 31, 1969, this proceeding was prematurely instituted. The petition is therefore dismissed.